#28388, #28403-aff in pt & rem in pt-SLZ
**2018 S.D. 31**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

PERCY ALLAN AHRENDT,                     Plaintiff and Appellee,

    v.

DIANE MUREE CHAMBERLAIN,                     Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MICHELLE K. COMER
Judge

\* \* \* \*

TIMOTHY R. JOHNS of
Johns & Kosel, Prof. LLC
Lead, South Dakota                     Attorneys for appellant.

DYLAN A. WILDE
Spearfish, South Dakota                     Attorney for appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
MARCH 19, 2018
OPINION FILED **04/11/18**

ZINTER, Justice

[¶1.]        Husband and wife held most of their assets separately throughout an eighteen-year marriage.  In granting the parties a divorce, the circuit court classified most of their assets as marital property and divided them equally.  Wife appeals.  We affirm on all but one clerical issue, which we remand for clarification.

**Facts and Procedural History**

[¶2.]        Percy Ahrendt and Diane Chamberlain were married in 1999.  Diane and her son from a prior marriage moved into Percy's residence.  During their first eight years, Diane worked various part-time jobs and made about $7,885 a year in reported income.  At that time, she was studying to obtain her securities licenses, and she paid approximately $250-$350 of the monthly marital expenses.  Percy made about $37,900 per year.  He paid the remaining marital expenses, including the mortgage on the home and health insurance for Diane and her son.  He also paid child and medical support for his two children from a prior marriage.  The couple decided early on that they would maintain separate financial accounts and individually manage their money and assets.

[¶3.]        Diane eventually obtained her securities licenses, and in 2007, she founded a financial consulting business that allowed her to begin making significant monetary contributions to the marriage.  Percy also obtained new employment at Peabody Energy Group, earning a good income.  As a result of their respective employments, they began accumulating significant assets, consisting primarily of real estate, business interests, and retirement accounts.

[¶4.]     Although Diane and Percy were earning similar incomes, Percy continued to pay the entire mortgage on the home, and he continued to provide health insurance for Diane and her son. Diane paid other marital expenses. In 2012, the couple sold Percy's house and jointly purchased a new home. Of the $93,644.18 in net proceeds, $81,431.85 was used as a down payment on the new, jointly owned home. Thereafter, Percy paid approximately 70% of the new $2,584.99 mortgage payment, and Diane paid approximately 30%.

[¶5.]     Percy and Diane separated in September 2014. Diane remained in the marital home and began paying the entire monthly mortgage payment. Percy paid his own expenses associated with his new apartment. Percy also continued to provide health insurance for Diane and her son (until he turned twenty-six in early 2016).

[¶6.]     Percy commenced this divorce action in June 2015. A two-day trial was held in June 2017 to divide property and debts.[1] The circuit court found that both parties made significant contributions to the acquisition of property, and the court classified most of their separately held assets as marital property. The court awarded Diane the marital home, her business, her five vehicles, her retirement account, and her financial accounts. Percy was awarded his new pickup, his large collection of sports cards and memorabilia, various pieces of personal property, his retirement accounts, and his financial accounts. The court required each party to be solely responsible for the debts associated with the respective assets awarded to them. Percy received net assets valued at $285,804 ($332,624 in assets less $46,820

---

1.     Neither party requested alimony.

in liabilities). Diane received net assets valued at $719,982.40 ($1,020,578.40 in assets less $300,596 in liabilities). The court ruled that the $434,178.40 difference in net assets was not equitable, and it ordered Diane to make a $217,089.20 equalization payment.

[¶7.]     Diane appeals, raising the following issues:

1. Whether the circuit court abused its discretion in classifying separately held assets as marital property.

2. Whether the circuit court abused its discretion in equitably dividing the marital estate.

**Decision**

*Classification of Separate Property*

[¶8.]     In a divorce, "courts may make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife. In making such division of the property, the court shall have regard for equity and the circumstances of the parties." SDCL 25-4-44. Before dividing property, the court must classify it as marital or nonmarital. *Nickles v. Nickles*, 2015 S.D. 40, ¶ 32, 865 N.W.2d 142, 153. We review both decisions under the abuse of discretion standard of review. *Richarz v. Richarz*, 2017 S.D. 70, ¶ 17 n.5, 904 N.W.2d 76, 81 n.5. Findings of fact are reviewed for clear error. *Scherer v. Scherer*, 2015 S.D. 32, ¶ 5, 864 N.W.2d 490, 493.

[¶9.]     Diane argues the circuit court abused its discretion in classifying the parties' separately held assets (financial accounts, retirement accounts, motor vehicles, her business, and business property) as marital property. She points out that Percy did not claim to be in need of support. She also contends the court

clearly erred in finding that Percy made significant contributions to the accumulation of the assets.

[¶10.] "South Dakota is an 'all property state,' meaning all property of the 'divorcing parties is subject to equitable division by the circuit court, regardless of title or origin.'" *Halbersma v. Halbersma*, 2009 S.D. 98, ¶ 9, 775 N.W.2d 210, 214 (quoting *Endres v. Endres*, 532 N.W.2d 65, 68 (S.D. 1995)). The court has broad discretion in classifying property as marital or nonmarital. *Anderson v. Anderson*, 2015 S.D. 28, ¶ 6, 864 N.W.2d 10, 13-14. "Only where one spouse has made no or de minimis contributions to the acquisition or maintenance of an item of property and has no need for support[ ] should a court set it aside as [nonmarital] property." *Id.* ¶ 6, 864 N.W.2d at 14. "The circuit court, however, is not to become entangled in the semantics of marital versus [nonmarital] property." *Halbersma*, 2009 S.D. 98, ¶ 10, 775 N.W.2d at 215. Factors to consider when classifying and dividing property include:

> (1) the duration of the marriage; (2) the value of the property owned by the parties; (3) the ages of the parties; (4) the health of the parties; (5) the competency of the parties to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets.

*Terca v. Terca*, 2008 S.D. 99, ¶ 20, 757 N.W.2d 319, 325.

[¶11.] In classifying the separately held assets as marital property, the circuit court found that Percy made significant contributions to the marriage. In Finding of Fact 125, the court found:

> [D]uring the first half, *i.e.*, the first 8 years, of the parties' marriage, Diane made very little income. As a result, Percy paid the entirety of the mortgage for the marital residence, provided

health insurance for the family, and paid a significant amount of the marital expenses.

In Finding of Fact 126, the court found:

Percy's significant contributions to the marriage and the marital expenses during the first half of the marriage allowed Diane to live a comfortable lifestyle that she would not have otherwise lived if not for Percy's contributions, and at the same time allowed Diane to be able to retain ownership in her one third interest of the farmland[2] instead of having to sell it to pay various living expenses.

[¶12.] Diane contends these findings are clearly erroneous. However, the parties' testimony and documentary evidence support them. That evidence reflects that Diane and Percy brought relatively little into the marriage but accumulated substantial assets over their eighteen years together. During the first half of the marriage, Diane made a small income relative to Percy, and Percy paid for most of the marital expenses. That changed in the latter years when Diane's business became successful. As a result, over the course of the entire marriage, both parties made substantial financial contributions to the marriage that allowed both to enjoy a standard of living that they would not have otherwise enjoyed.

[¶13.] Additionally, Percy's financial contributions and support helped Diane obtain securities licenses and start her financial consulting business. That business generated sufficient income for her to acquire additional assets without having to sell or commingle her separately held assets, including the property she inherited. As the circuit court observed, Percy's financial contributions were indirect contributions to the accumulation of property, which occurs "when one spouse's

---

2. Diane inherited a one-third interest in property from her father that was eventually sold for $90,000. *See generally infra* ¶ 21.

work efforts allow[ ] the other spouse to maintain inherited property separately and avoid commingling assets that otherwise would be required for the support and maintenance of the family." *Terca*, 2008 S.D. 99, ¶ 25, 757 N.W.2d at 326. There was also evidence that Percy contributed socially and physically to the development of Diane's financial business and the building in which it was located. That type of nonmonetary contribution to the marriage "must be considered as no less significant and substantial to the accumulation of marital property than the other spouse's labor outside the home." *Id.* Thus, the circuit court did not clearly err in finding that both parties contributed to the accumulation of marital property.

[¶14.] We finally observe that although most of the couple's assets were held individually, there was no agreement that the income, assets, or debts accumulated by one party would be the sole property of that party. On the contrary, Percy testified that the money and assets were "to be ours." Accordingly, the circuit court did not abuse its discretion in classifying most of the parties' assets as marital property. Percy made substantial contributions to the acquisition of the parties' property, and the court's findings of fact reflect that the court considered the other relevant factors.

[¶15.] Diane also argues the circuit court abused its discretion in including specific assets in the marital estate. She first contends the court should not have included $29,889 in a qualified § 529 tuition plan that was for her son's college expenses. She points out that her contributions to that account are treated as a completed gift to her son for income tax purposes. However, Diane conceded that the account was in her name and that she could withdraw the funds for other

purposes upon payment of a penalty. She also admitted that the contributions to the plan came from income earned during the marriage. The court did not abuse its discretion in including the § 529 funds in the marital estate.

[¶16.]     Diane next contends the court abused its discretion in including $8,776 from a Waddell & Reed bank account that had a zero balance at the time of trial. The record reflects that prior to trial, Diane transferred the funds to her son Jonathan, purportedly for rent and other expenses while he attended school. Those funds first originated from a $50,000 loan Diane obtained in 2010 from her 401(k). She then used $10,000 of the loan to help Jonathan pay for a new car. As Jonathan repaid some of that money, Diane deposited the funds in the Waddell & Reed account, intending to later use the funds for Jonathan's school expenses. Percy did not learn about the account until it was disclosed during discovery, and he never consented to or approved the pretrial transfer. The circuit court included the account in calculating Diane's assets because it considered the transfer an unauthorized dissipation of assets in violation of the court's temporary restraining order. *See* SDCL 25-4-33.1(1).

[¶17.]     Diane argues the court abused its discretion in classifying the $8,776 account as marital property. She contends the issue was not raised prior to or during trial. However, Percy argued it was an unauthorized dissipation of assets in his proposed findings of fact and conclusions of law. Indeed, the parties to a divorce are automatically restrained from "transferring . . . or in any way dissipating or disposing of any marital assets, without the written consent of the other party or an order of the court, except as may be necessary in the usual course of business or for

the necessities of life." SDCL 25-4-33.1(1). Diane also contends the transfer was not made in bad faith and was not designed to deplete the marital estate. However, SDCL 25-4-33.1(1) does not require evidence of bad faith or a design to deplete the marital estate, and Diane did not establish entitlement to the statutory requirements for the exception to recapture. Ultimately, considering that the funds originated from Diane's 401(k), which was funded from income earned during the marriage, the circuit court acted within its discretion in including the account's balance before the unauthorized transfer.[3]

[¶18.] Diane next contends the circuit court abused its discretion in including a jointly owned Black Hills Federal Credit Union account that was used to hold insurance proceeds the couple received for hail damage to their home. The account balance was $92 prior to trial but had a zero balance at the time of trial. Diane testified she withdrew the money from the account to reimburse herself for repairs made to the home, but she did not introduce documentary evidence supporting that claim. It appears there was a credibility question regarding this joint account, and a circuit court does not abuse its discretion in resolving conflicts in credibility.

[¶19.] Diane lastly contends the circuit court abused its discretion in including the value of a BMW motorcycle in the marital estate. She contends the

---

3. Diane claims that this ruling is inconsistent with the fact that Percy purchased a new vehicle shortly before trial and that he sold Peabody stock for a mere $63. However, Percy included the entire value of the vehicle in his assets, whereas Diane attempted to exclude the entire Waddell & Reed account from the marital estate. Further, Percy sold his Peabody stock, the value of which was included in his assets, because Peabody declared bankruptcy and his financial advisor advised him to sell the stock for whatever he could.

motorcycle belongs to her son and should not be considered a marital asset. However, she testified that she paid for the motorcycle, that Jonathan is paying her back, and that her name is on the loan and title. The court did not abuse its discretion in including the value of the motorcycle in the marital estate.

*Equitable Division of Property*

[¶20.] Diane raises several arguments relating to the circuit court's division and valuation of property. She first contends the court erred in failing to give her credit for the debt she reduced on the parties' home and other secured assets after the parties separated in 2014. However, absent special circumstances, assets and liabilities are valued at the time of trial rather than the time of separation. *Johnson v. Johnson*, 2007 S.D. 56, ¶ 37, 734 N.W.2d 801, 810. Moreover, both parties incurred separate residence and other living expenses during the separation.[4]

[¶21.] Diane argues the court abused its discretion in failing to trace the proceeds of her inheritance. "'Tracing' is an equitable principle [that] allows a party with the right to property to trace that property through any number of transactions in order to reach the final proceeds or result." *Charlson v. Charlson*, 2017 S.D. 11, ¶ 14, 892 N.W.2d 903, 907. Diane inherited a one-third interest in her father's farm and received $90,000 when the farm was sold, but she did not

---

4. Along the same line, Diane claims she should receive credit for the "increase in value" of her retirement account after separation, "which increased due to [her] savings habits and the appreciation of the market." However, Diane has not provided the value of her retirement account at the time of separation, and the record shows that the value of the account actually decreased between July 2015 and the time of trial.

maintain these proceeds separately.  She eventually used them to increase her 401(k) account, remodel her office, and pay various medical expenses.  Although tracing is allowed, *id.*, it is not required as a matter of law.  Moreover, Diane's "inherited property '[was] not ipso facto excluded from consideration in the overall division of property.'"  *See Nickles*, 2015 S.D. 40, ¶ 32, 865 N.W.2d at 153 (quoting *Novak v. Novak*, 2006 S.D. 34, ¶ 5, 713 N.W.2d 551, 553).  The circuit court did not abuse its discretion in declining to trace and claw back Diane's inheritance.

[¶22.]        Diane next claims the circuit court erred in failing to give consideration to Percy's alleged dissipation of assets.  Diane spends much of her brief emphasizing the relative difference in the two parties' spending and saving habits.  She points out that Percy's hobbies were gambling and collecting sports cards and related memorabilia.  She contends that while Percy spent money on those things, she was a prudent saver and investor who contributed much more than Percy to the accumulation of assets.  However, the equities and relevant factors that must be weighed in a divorce property division require consideration of more than just the different spending habits of the parties during the marriage.  Additionally, although inappropriate spending in excess of contributions could affect a property division, that factual case was not proven here.  The court acknowledged that Percy spent his disposable income on his gambling and sports-memorabilia hobbies, but the court nevertheless found that he contributed significantly to the marriage and the accumulation of assets.

[¶23.]        Diane next contends the circuit court erred in failing "to make any finding" on "the income producing capacity" of Percy's Retiree Medical Allowance

(RMA) benefit provided by his employer. She contends the RMA has a "very realistic income producing capacity to cover, at [the] time of [Percy's] retirement, all of his medical expenses and medications not otherwise covered by Medicare." However, the court found that the RMA had no cash value, it was not transferable, it could not be accessed until Percy's retirement, it could not be used until Percy actually had an eligible claim, and it terminated on Percy's death. The court also noted that Percy's employer was struggling financially and that the plan could be terminated or modified at the employer's sole discretion. Because actual reimbursement of any specific amount was speculative, the court concluded that the RMA had no present value to include in the marital estate. Under these circumstances, the court did not err in failing to further value or make further findings on the RMA.

[¶24.] Diane finally contends the circuit court erred in failing to divide and allocate three liabilities: $35,000 she owed to her business partner, $2,595 in unpaid property taxes on the marital home, and $746.60 in unpaid property taxes on her office condominium. The record suggests that the court's failure to allocate these debts may have been a clerical error. The court expressly found that the $35,000 was a "marital debt" that Diane would be responsible for paying,[5] yet the court failed to include the $35,000 in the final calculation of Diane's assets and liabilities. The property taxes are also not included even though the court specifically found that Diane would be liable for those taxes. These rulings suggest the court's failure

---

5. This finding was proposed by Percy.

to finally allocate these debts may have been inadvertent. Accordingly, we remand this issue for the circuit court's clarification.[6]

**Conclusion**

[¶25.] The circuit court's classification and division of property is affirmed in all but one respect. We remand the business-debt and real-estate-tax issues for clarification. The remand should be on the existing record, and the court should clarify its intent by entering supplementary findings of fact and conclusions of law. If necessary to carry out its intent, the court may adjust its property division in any manner it finds equitable.

[¶26.] GILBERTSON, Chief Justice, and SEVERSON, KERN, and JENSEN, Justices, concur.

---

6. Diane also makes one argument not related to a specific asset or liability. She contends the court erred in dividing the assets because it failed to consider that her earning capacity may be hindered due to a personal injury she suffered in 2012. However, she introduced no evidence showing that her injury would affect her future earning capacity. Additionally, the record indicates that her income since 2012 has actually increased.