#28901-r-MES
**2020 S.D. 51**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

AREN FIELD,                                          Plaintiff and Appellant,

     v.

MATTHEW FIELD,                                  Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
KINGSBURY COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE GREGORY J. STOLTENBURG
Judge

\* \* \* \*

JENNIFER GOLDAMMER of
Helsper, McCarty & Rasmussen, P.C.
Brookings, South Dakota                        Attorneys for plaintiff and
                                  appellant.

TODD D. WILKINSON
GARY W. SCHUMACHER of
Wilkinson & Schumacher Law Prof. LLC
De Smet, South Dakota                          Attorneys for defendant
                                 and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
SEPTEMBER 30, 2019
OPINION FILED **09/09/20**

SALTER, Justice

[¶1.]      Following a divorce trial, the circuit court excluded farmland Aren Field purchased with her former husband from the marital estate. A relative of Aren's husband sold the land to the Fields at a significantly discounted purchase price, and the court determined the transfer to be a partial gift solely to the husband. Aren challenges this determination and also argues that, in any event, the court abused its discretion by not considering evidence of her contribution to the acquisition and maintenance of the farmland. We reverse and remand for further proceedings consistent with this opinion.

## Background

[¶2.]      Aren and Matt Field were married in 2001. The two began dating when they were both students at South Dakota State University. Matt later graduated with a bachelor's degree in animal science and moved to Iowa to work at a commercial hog facility. Aren joined him and eventually obtained a bachelor's degree, also in animal science, from Iowa State University.

[¶3.]      The couple moved back to South Dakota in 2002 and settled on an acreage they purchased from Matt's grandmother near Lake Preston. Both Matt and Aren obtained jobs connected to agriculture, but Matt's long-held ambition was to have his own farm and livestock operation. Aren supported Matt's aspiration, and the two started modestly by acquiring some livestock.

[¶4.]      Over time, Matt grew close to his relative, Dennis Ryland, who farmed east of Lake Preston. Matt helped Dennis for several years with all aspects of Dennis' row-crop farming operation, and eventually Matt and Aren rented some of the land for their own crops. Dennis saw Matt as a hard worker with an earnest

desire to farm for himself. In 2006, Dennis granted "to Matthew Field and Aren Field" an option to purchase his farm (the Ryland Farm)[1] for $300,000, which was significantly below its market value.

[¶5.]     Dennis was interested in keeping the land in the family after he was done farming. During his trial testimony, Dennis explained that the land was homesteaded in 1878 by his great-grandfather and has been owned and farmed by family members ever since.

[¶6.]     Dennis' effort to plan for his succession was impacted by the fact that his only child lived out of state and did not want to farm. However, Dennis came to view Matt as a worthy successor because of his strong work ethic and kinship. As a result, Dennis set the purchase price for his farm substantially below its market value to allow Matt and Aren the chance to operate the farm without incurring a prohibitive amount of debt.

[¶7.]     In 2010, Aren and Matt exercised their option to purchase the Ryland Farm. The terms of the sale were incorporated into a contract for deed that required payment of the $300,000 purchase price in annual principal payments of $15,000 and applied an interest rate of 5% to the unpaid balance. Both Aren and Matt signed the contract for deed, which described them as joint tenants with rights of survivorship. Prior to the couple's separation, they made the periodic principal and interest payments using money from their joint checking account.

---

1.     The record contains differing acreage amounts for the Ryland Farm, varying from 467 acres to 478 acres.

[¶8.] Aren worked outside of the home for much of the marriage, but in 2014, she quit her full-time job and worked at home, raising the parties' three children and assisting Matt in various aspects of the family farming operation. Aren later returned to full-time employment after the parties separated. Matt also maintained other employment over the course of the parties' marriage and was working as a contracted seed dealer at the time of trial.

[¶9.] The parties' marriage deteriorated, and Aren commenced this divorce action in May 2016. She moved out of the marital home with the parties' children a short time later. The parties stipulated to a divorce on the grounds of irreconcilable differences, but they were unable to reach an agreement concerning the division of marital property and child custody. They agreed to try these issues separately, and the circuit court conducted a court trial to determine an equitable division of the marital estate. The principal issue before the court was whether the Ryland Farm should be treated as Matt's separate property.

[¶10.] Matt argued that the Ryland Farm was essentially a gift from Dennis solely to him, and it should therefore not be subject to equitable division. Matt introduced evidence indicating the farm was worth $1,826,000 in 2010 when he and Aren purchased it and was worth $2,200,000 at the time of trial. He proposed including only the discounted $300,000 purchase price and the appreciated value of $374,000 in the marital estate. Matt claimed the remaining $1,526,000 should be excluded from the marital estate as his separate property because it represented the value of Dennis' gift to only him, not Aren.

[¶11.]     For her part, Aren argued the entire value of the Ryland Farm should be subject to the court's equitable division as an asset of the marital estate because it was not exclusively given to Matt. Through the presentation of her testimony and other witnesses, Aren also contended that she had contributed directly and indirectly to the acquisition of the Ryland Farm and its maintenance and operation.

[¶12.]     The circuit court accepted Matt's view and determined $1,526,000 should be excluded from the marital estate and treated as Matt's separate property. The court's decision turned on its determination of Dennis' donative intent.

> [I]t was very clear to this Court that Dennis Ryland wanted this land to go to a family member that farms the property and the only one . . . was Matt. Matt is a relative and he farmed with Dennis for a period of time and it's clear that Dennis wanted to offer him a chance to farm. Dennis was impressed with Matt's work ethic.
>
> * * * *
>
> And it really did not matter whether [Matt] was married, whether he was single, who he was married to, the fact is Dennis Ryland would not have sold him that land for a discounted price of $300,000 on a piece of property that was valued at 1.8 million unless he was Matt Field, his relative.

[¶13.]     Although the circuit court made a general finding that both parties had contributed equally to the accumulation of property, the court excluded the $1,526,000 gift because Matt was the reason for Dennis' benevolence. Beyond this, though, the court did not make specific findings concerning the extent that Aren contributed, directly or indirectly, to the acquisition or maintenance of the Ryland Farm.

[¶14.]     Aren appeals, presenting the single issue of whether the circuit court abused its discretion by excluding $1,526,000 of the Ryland Farm's appraised value from the marital estate.

## Analysis

[¶15.]     We review a circuit court's decision to determine whether property is marital or non-marital for an abuse of discretion. *Anderson v. Anderson*, 2015 S.D. 28, ¶ 8, 864 N.W.2d 10, 14. We have recently reaffirmed our formulation of the abuse of discretion standard, describing it as "a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *State v. Delehoy*, 2019 S.D. 30, ¶¶ 21-22, 929 N.W.2d 103, 108-09 (quoting *Thurman v. CUNA Mut. Ins. Soc'y*, 2013 S.D. 63, ¶ 11, 836 N.W.2d 611, 616). In so doing, however, we did not abandon the self-evident corollary that an error of law is never within the range of permissible choices and necessarily constitutes an abuse of discretion. *Lewis v. Sanford Med. Ctr.*, 2013 S.D. 80, ¶ 27, 840 N.W.2d 662, 668.

[¶16.]     We have described South Dakota, in general terms, as an "all property state," which means that "all property of both of the divorcing parties [is] subject to equitable division by the [circuit] court, regardless of title or origin." *Billion v. Billion*, 1996 S.D. 101, ¶ 61, 553 N.W.2d 226, 237 (citation omitted). This principle reflects an uncomplicated interpretation of SDCL 25-4-44, which provides as follows:

> When a divorce is granted, the courts may make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife. In making such division of the property, the court shall have regard for equity and the circumstances of the parties.

[¶17.]     Spouses are certainly "entitled to maintain separate property and do with it as they see fit." *Halbersma v. Halbersma*, 2009 S.D. 98, ¶ 9, 775 N.W.2d

210, 215. However, gifted or inherited property is not automatically deemed separate and "ipso facto excluded from consideration in the overall division of property." *Anderson,* 2015 S.D. 28, ¶ 7, 864 N.W.2d at 14 (quoting *Novak v. Novak,* 2006 S.D. 34, ¶ 5, 713 N.W.2d 551, 553). In making its decision whether to include inherited or gifted property, a circuit court may consider "other evidence . . . including the origin and treatment of . . . property and the direct or indirect contributions of each party to the accumulation and maintenance of the property." *Halbersma,* 2009 S.D. 98, ¶ 12, 775 N.W.2d at 215.

[¶18.] We have often held that the question of whether to exclude property from the marital estate should be guided by the same factors used to determine an equitable division for a divorcing couple's assets and liabilities. *See, e.g.*, *Novak,* 2006 S.D. 34, ¶ 4, 713 N.W.2d at 552 (listing seven factors considered to determine an equitable division of marital assets). However, the principal rule for analyzing a discrete claim of separate property provides that "[o]nly where one spouse has made no or de minimis contributions to the acquisition or maintenance of an item of property and has no need for support, should a court set it aside as 'non-marital' property." *Novak,* 2006 S.D. 34, ¶ 5, 713 N.W.2d at 552-53 (citation omitted).

[¶19.] Here, the court's finding that Dennis intended to keep his farm in the family is certainly supported by the record, as is its additional finding that Matt was the sole familial connection. However, this evidence only explains *why* Dennis made a partial gift, not *to whom*. The bare fact that Matt was the but-for cause of Dennis' gift does not necessarily foreclose the possibility that Dennis gave the land to Matt *and* Aren.

[¶20.] In this regard, there is no evidence that Dennis, Matt, or Aren anticipated a divorce when Dennis granted the Fields an option to purchase the Ryland Farm in 2006 or when they exercised the option in 2010. The option expressly included both Matt and Aren, and the subsequent contract for deed listed them as joint tenants with rights of survivorship. Both documents were drafted by an attorney and contain no restrictions on Dennis' transfer of the Ryland Farm. The couple made annual payments during the marriage with marital funds to which Aren contributed her earnings. Although the circuit court was free to consider Dennis' donative intent, it cannot be used to revise the historical facts associated with Dennis' gift which, the undisputed evidence establishes, included Aren. We previously rejected a similar effort to reconceptualize donative intent associated with a gift to a married couple who later divorced. *See Godfrey v. Godfrey*, 2005 S.D. 101, ¶¶ 25-27, 705 N.W.2d 77, 82.

[¶21.] In *Godfrey*, we held that the circuit court abused its discretion when it excluded a lifetime gift of real estate given by a husband's parents from the divorcing parties' marital estate. *Id.* ¶ 28, 705 N.W.2d at 82-83. After concluding that the court had failed to consider the wife's contribution to the acquisition or maintenance of the property, we further determined that the land conveyed to the parties as joint tenants "was a gift to *both* [the husband and wife]." *Id.* ¶ 27, 705 N.W.2d at 82. In doing so, we noted testimony from the husband's father who claimed years later during the couple's divorce trial, "Well, that's what it says on the sheet, but that isn't the way we worded it when we gave it to them." *Id.* ¶ 26, 705 N.W.2d at 82. We determined this to be a belated effort to recast the nature of

the gift[2] and concluded that the court should have considered the gifted land as marital property. *Id.* ¶¶ 27-28, 705 N.W.2d at 82-83.

[¶22.] We have similar concerns here. Dennis granted the option to purchase the Ryland Farm to Matt and Aren and later sold it to both of them using a contract for deed prepared on his behalf that listed the couple as joint tenants with rights of survivorship. Although we have recognized that a circuit court in a divorce action is not bound by the form of a deed or, in this case, a contract for deed, the purposeful act of conveying real estate to a husband and wife as joint tenants can be "convincing evidence of the realty's status as marital property." *Id.* ¶ 23, 705 N.W.2d at 82. In his testimony, Dennis acknowledged he could have made the partial gift to Matt only but stated "they were married at the time."

> Q: [by Aren's counsel]: But you instead you sold it to Matt and Aren, right?
>
> A: [Dennis Ryland]: Yes.
>
> Q: When is the first time that you started calling this a gift?
>
> A: Well, I never really did call it a gift.
>
> Q: Did you ever tell Matt that this was a gift to him?
>
> A: Not really.
>
> Q: Did you ever tell Aren that it was a gift to her and Matt?
>
> A: No. I'm sure they realized that probably.

[¶23.] Although we have previously held that "the donor's intent must be shown in order to determine that a gift has been made," we have never specifically

---

2. The husband's parents had also filed federal gift tax returns designating husband and wife individually as owners of the gifted land. *Id.* ¶ 7, 705 N.W.2d at 79.

stated the point at which intent must be judged. *Albrecht v. Albrecht*, 2000 S.D. 54, ¶ 15, 609 N.W.2d 765, 769 (citation omitted). However, our cases strongly suggest that a donor's intent should be judged at the time of the gift or purported gift. *See Godfrey*, 2005 S.D. 101, ¶ 27, 705 N.W.2d at 82 (holding donor's testimony favorable to his son in a divorce action "ten years after" the donor's real estate gift "was insufficient to overcome the evidence . . . establishing joint tenancy . . . ."); *Albrecht*, 2000 S.D. 54, ¶ 15, 609 N.W.2d at 770 (stating post-divorce theory that real estate sale from husband's parents was a gift to husband "seems to have been birthed solely for the purposes of this divorce action"); *see also Koerner v. Nielsen*, 8 N.E.3d 161, 165 (Ill. App. Ct. 2014) ("Donative intent is determined at the time of the alleged transfer of property, and is controlled by what the parties said or did at the time of the transaction, and not what is said at a later time.").

[¶24.]	Synthesizing these cases into a rule that we view to be justified by both legal and practical considerations, we now hold that a donor's, or putative donor's, intent must be judged at the time of the alleged gift. Applying the rule here, the circuit court's findings about Dennis' intent to keep the Ryland Farm in the family, though supported by the evidence, cannot sustain the broader conclusion that Dennis intended to gift the land solely to Matt. Dennis' testimony in this regard appears to be a product of the divorce action—not the intent he expressed years earlier at the time of the gift when there was no discernible effort to distinguish between Matt and Aren. The circuit court's determination regarding this separate property issue is not supported by our cases, and we must therefore vacate the

court's order dividing the property and remand the case with instructions to include the entire value of the Ryland Farm in the marital estate.

[¶25.] Though not necessary to our disposition here, we write further to explain how the operation of our decisional law would require us to remand the case even if the disputed portion of the Ryland Farm's value was solely a gift to Matt. In such an event, the circuit court would have been obligated to continue its analysis by considering evidence of Aren's contributions and her need for support. Only if it determined she had made no or merely a de minimis contribution to the acquisition and maintenance of the Ryland Farm and had no need for support could the court have excluded the gifted property value from the marital estate. This equitable principle has a strong basis in our decisions. We have consistently held that spouses can provide valuable contributions to the acquisition and maintenance of inherited or gifted property by acting as homemakers or working separately to assist the other spouse in maintaining inherited or gifted property.

[¶26.] In *Anderson*, for example, we affirmed the circuit court's decision to treat two quarter sections of farmland—one gifted to the husband and the other inherited by the husband—as marital property. 2015 S.D. 28, ¶ 11, 864 N.W.2d at 16. The gifted land was held by the husband and wife jointly, and both quarters were transferred well after the parties' marriage. *Id.* ¶ 3, 864 N.W.2d at 12-13. We determined the circuit court had acted within its discretion by crediting the wife's contribution as a mother and a homemaker because it "afforded [her husband] the time he needed to maintain the farm equipment, plant crops, harvest crops, and other similar tasks." *Id.* ¶¶ 8-9, 864 N.W.2d at 14-15.

[¶27.] Citing a similar contribution inquiry, we also affirmed the circuit court's decision to treat assets held only in a wife's name as marital property in *Ahrendt v. Chamberlain*, 2018 S.D. 31, ¶ 14, 910 N.W.2d 913, 919. The circuit court's findings in *Ahrendt* were based upon the husband's indirect contributions, which included "work efforts [that] allow[ed] the other spouse to maintain inherited property separately . . . that otherwise would be required for the support and maintenance of the family." *Id.* ¶ 13, 910 N.W.2d at 919 (quoting *Terca v. Terca*, 2008 S.D. 99, ¶ 25, 757 N.W.2d 319, 326).

[¶28.] Here, there is evidence that Aren acted as the principal homemaker and caretaker for the children. She also worked outside of the home and contributed to the family's income. Her earnings were deposited into a joint account that was used to make payments on the Ryland Farm. There is also evidence that Aren assisted directly with the couple's overall farming operation by, among other things, bottle-feeding lambs, delivering grain, driving truck during harvesting, and preparing and delivering meals to Matt and Dennis in the field. However, the circuit court did not consider whether these seemingly beneficial contributions were merely de minimis or whether Aren had a demonstrated need for support before it excluded a portion of the Ryland Farm's value from the marital estate.

[¶29.] By overlooking this inquiry, the circuit court applied a rule that would conclusively prevent the entire value of the Ryland Farm from ever being considered marital property regardless of Aren's contributions. Such a rule, if accepted, would be in irreconcilable tension with our existing decisional law.

## Conclusion

[¶30.]    The circuit court abused its discretion in excluding the value of Dennis' partial gift from the marital estate because the entire value of the Ryland Farm should be subject to equitable division.  We reverse the court's property division order and remand the case for further proceedings consistent with this opinion.

[¶31.]    GILBERTSON, Chief Justice, and KERN, JENSEN, and DEVANEY, Justices, concur.