#29428-r-PJD
**2021 S.D. 62**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

RUSSELL P. CONTI,                                          Plaintiff and Appellee,

    v.

KIBBE CONTI,                                                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CRAIG A. PFEIFLE
Judge

* * * *

STANTON A. ANKER of
Anker Law Group, P.C.
Rapid City, South Dakota                        Attorneys for defendant and
                                                                appellant.


LORIE D. MELONE
Rapid City, South Dakota                        Attorney for plaintiff and
                                                                appellee.

* * * *

CONSIDERED ON BRIEFS
MARCH 22, 2021
OPINION FILED **11/03/21**

#29428

DEVANEY, Justice

[¶1.]     In this divorce action, Kibbe Conti challenges the circuit court's valuation of the marital estate, inclusion of certain property in the marital estate, and determination that she owes Russell Conti an $11,435.96 cash equalization payment.  We reverse and remand.

**Factual and Procedural Background**

[¶2.]     In April 2017, Russell Conti brought suit against Kibbe Conti for divorce based on extreme cruelty and adultery or, alternatively, irreconcilable differences.  The parties had been married for approximately 23 years, and two children were born during the marriage.  In her answer, Kibbe denied Russell's allegations and asserted a counterclaim for divorce based on irreconcilable differences.  However, this appeal concerns only the valuation and division of certain property.

[¶3.]     During the two-day divorce trial on August 27, 2018 and September 25, 2018, the parties stipulated to the use of a joint property exhibit (Exhibit A-1) that set forth the parties' respective proposed values and division of property.  The joint property exhibit reflected that both parties valued the marital residence at $384,300 and referred to Exhibit 15 to support the valuation.  Exhibit 15 is a Pennington County property record listing the 2017 assessed value of the property as $384,300.

[¶4.]     One of the parties' disputes centered on whether a property jointly owned by Kibbe and her father, Edward, should be included as marital property.  Edward passed away in August 2018 while Russell and Kibbe's divorce was

-1-

pending. The property, located at Major Lake Road in Hill City, South Dakota, was purchased in 2011 and titled in Kibbe's and her father's names, as tenants in common. No loan documents were admitted at trial; however, Exhibit A-1 includes as a debt the outstanding principal on the loan associated with Edward's home. Russell valued this debt at $62,792.12, and Kibbe valued it at $56,050.24.

[¶5.] Russell proposed a value of $130,000 for the Major Lake property on Exhibit A-1, and he requested that the circuit court treat it as marital. Russell also requested that the court award the property to Kibbe and reimburse him for his one-half share of marital funds Kibbe used to make a $1,000 cash down payment on the purchase of the property and a later $4,000 payment to Iseman Homes to purchase a new modular home for the property. Kibbe testified that she did not believe the Major Lake property should be considered marital property "[b]ecause of the way it was purchased," referring to the fact that only her name, not Russell's, appears on the mortgage statements. However, she further testified that in the event the court treated it as marital, her proposed valuation of $117,000 listed on Exhibit A-1 was based on a market analysis that had been performed by a local realtor. In regard to Russell's request for reimbursement of his one-half of the $5,000 in marital funds Kibbe used for this property, Kibbe agreed that these transactions occurred during the marriage and that she would "take the responsibility for" them.

[¶6.] At the conclusion of the second day of trial, the circuit court directed the parties to submit proposed findings of fact and conclusions of law. Russell submitted his proposals on August 24, 2018. He proposed that the marital

residence be awarded to him and valued it at $384,300. He further proposed that Kibbe be awarded half of the equity after the home is sold. Russell requested that the property Kibbe jointly owned with her father be deemed marital and that the property and associated debts be awarded to Kibbe. He also requested that the court award him half of the value of the $5,000 in payments previously made on the property. Finally, he requested that the court adopt his proposed valuations and property division as set forth in an attached property exhibit (which is different from Exhibit A-1, the joint property exhibit submitted at trial) and award him $34,342.76 from Kibbe as a cash equalization payment.[1]

[¶7.] Kibbe filed an objection to Russell's proposals and filed her own proposed findings and conclusions on October 22, 2018. She did not request specific findings as to the matters upon which they agreed as reflected in Exhibit A-1, including the valuation of the marital home. For the Major Lake property, however, Kibbe requested that the circuit court find it was not marital property. As such, she requested that neither the property nor the corresponding debts be included in the court's equitable distribution. Kibbe requested a $94,883.18 cash equalization payment from Russell based on her proposed property division.

[¶8.] Several months passed, and before the circuit court issued a ruling, Kibbe filed a motion on June 26, 2019, to supplement the record because, in her view, the value of the marital residence had increased since the 2018 divorce trial. Russell objected, asserting that "[t]he value of the marital residence was not a

---

1.	This amount is different than the proposed equalization payment of $12,393.76 to Kibbe, as reflected on Exhibit A-1, the joint property exhibit submitted at trial.

factual conflict for trial" and Kibbe "waived the ability to now supplement the record to create a dispute on the value."

[¶9.] The circuit court granted Kibbe's motion and held an evidentiary hearing on August 28, 2019. At the hearing, Kibbe presented testimony from Robert Sundby, a real estate broker, in support of her claim that the value of the marital residence had increased to $422,360. Sundby testified that he did not personally examine the home. Rather, he used an automated valuation tool from the National Association of Realtors to arrive at his estimated valuation of the property. He then explained that using this tool would be "a good starting point" if he was going to list the property for sale. He would then "look at other tools and other valuation systems that are out there as well in addition to this[.]"

[¶10.] During cross-examination, counsel for Russell showed Sundby an appraisal report completed by a certified appraiser on October 25, 2018. The parties had stipulated to the admission of this exhibit. Sundby agreed that the 2018 appraisal valued the marital residence at $327,000, but he was not asked any questions about the methodology used or whether he agreed or disagreed with this valuation. The circuit court then questioned Sundby specifically about his valuation method using the automated tool to arrive at the $422,360 amount. Russell presented testimony from Tristan Emond, a real estate agent who had prepared a comparative market analysis for the marital residence. Emond testified that he personally examined the residence to better determine the condition of the home. Based on his market analysis, Emond opined that the value of the marital residence would be approximately $390,000.

[¶11.]     At the end of the hearing, the court directed the parties to submit updated proposed findings and conclusions related to the value of the marital home and "any modifications that may be pertinent to the previously-accepted joint property exhibit."[2]  In Russell's second amended proposed findings and conclusions, he requested that the court value the marital home at $327,000 as reflected in the October 2018 appraisal and find that there was insufficient evidence to refute this value.  Russell further proposed that the court find that Kibbe's claimed increase in value was not supported by the evidence.  Russell requested that the court adopt his proposed property division in its entirety, which would require him to pay Kibbe $2,319.73 as a cash equalization.

[¶12.]     Kibbe's second amended proposed findings of fact and conclusions of law requested that the court value the marital residence at $422,360 based on her expert's testimony.  She urged the court to reject Russell's suggested valuation of $327,000 given that Russell's witness testified at the August 2019 evidentiary hearing that the home was worth at least $390,000.  She requested that the court adopt her proposed valuations and division as reflected in an attached joint property exhibit and award her a $127,928.80 cash equalization payment from Russell.

[¶13.]     In April 2020, the circuit court issued findings of fact and conclusions of law.  The court granted Russell a divorce based on adultery and alternatively concluded that the marriage had broken down because of irreconcilable differences.

---

2.     On December 9, 2019, the circuit court entered a judgment granting the parties a divorce but reserving all other issues, including the grounds for divorce, custody, visitation, child support, and property division.

The court found that both parties were in good health, were capable of gainful employment, and were gainfully employed. It further determined that the parties had both contributed to the accumulation of property and debt during the marriage. The court denied Russell's request for alimony in light of the property division and because each party has the capability to earn a sufficient income.

[¶14.] Regarding the property division, the court noted that while the parties had agreed on the value and division of certain assets and debts as provided in a revised joint property exhibit, a "handful of items" were in dispute. The court indicated that its valuation and division of property was "as outlined" on this joint property exhibit "and as explained in the findings[.]"[3] Further, the court provided that if the property was not specifically referenced in the findings, this meant the court had adopted the party's position as set forth in the revised joint property exhibit.

[¶15.] In regard to the property at issue here, the circuit court rejected Kibbe's claim that the value of the marital residence had increased from the $384,300 value the parties had agreed upon at trial to $422,360 because, in the court's view, Kibbe's proposed value was "not supported by the evidence." Instead, the court found that "for purposes of determining an equitable division of property,"

---

3.     This joint property exhibit is dated September 13, 2019, and includes the judge's handwritten notes valuing and dividing the property and determining the cash equalization payment. This property exhibit contains a slightly different proposed equalization payment in Kibbe's column ($128,598.54) than that which she proposed in her latest submissions to the court (a $127,928.80 payment from Russell to her). The court sent the parties an email indicating, "I was unable to locate my copy of the JPE, so I used the hard copy exhibit and hand wrote my findings . . . ."

the value of the marital residence was $327,000 "as provided by the appraisal[.]"  In this finding, the court referred to Exhibit 15, the Pennington County property tax record (which contained a $384,300 value), not the appraisal.

[¶16.]     The court also entered findings related to the Major Lake property.  It found that the property was the home of Kibbe's father, and that at the time Edward passed away, Kibbe owned an undivided one-half interest in the property.  The court further found that the property was subject to a mortgage as identified on the revised joint property exhibit and was subject to "two additional debts"—the $1,000 initial cash down payment and the later $4,000 payment to Iseman Homes to purchase the new modular home.

[¶17.]     As to the property's value, the court entered a finding stating that it "accepts" Kibbe's valuation and awards her the property and "the debts associated therewith."  But in the revised joint property exhibit, the court valued Kibbe's one-half interest in the Major Lake property at $65,000, an amount based upon one-half of Russell's proposed valuation ($130,000), rather than on Kibbe's ($117,000).  Although the outstanding loan associated with this property is noted on the revised joint property exhibit, the court did not subtract this amount from the value listed for this asset, nor did the court include this amount as one of Kibbe's debts.  The only "debts" the court associated with this property and assigned to Kibbe were the $1,000 cash down payment and the $4,000 payment to Iseman Homes.

[¶18.]     In its April 2020 ruling, the court awarded Russell $427,758.16 in assets and assigned him $271,305.19 in total debts, resulting in a net asset award of $156,452.37.  The court awarded Kibbe $214,479.25 in assets and assigned her

$74,062.84 in total debts, resulting in a net asset award of $140,416.71. Despite Russell having the greater amount of net assets, the court ordered Kibbe to make a $12,035.66 cash equalization payment to Russell, an amount which, according to the court, takes into account a $4,000 reimbursement *owed* to Kibbe for child support overpayment.

[¶19.] Kibbe objected to several of the circuit court's findings and conclusions. She asserted that the parties had stipulated to the $384,300 value of the marital residence at trial, and further argued that the evidence at the 2019 hearing supported her claim that the home had increased in value. She also claimed that her proposed valuation was supported by an attached printout from the Pennington County Equalization Office's website listing the 2020 tax assessed value of the property as $413,700. Additionally, Kibbe disputed the court's inclusion of the Major Lake property in the marital estate, but alternatively asserted that if the property was considered marital, the outstanding mortgage should also have been deemed as marital debt and subtracted from the value of the property. Finally, she claimed that the court's order awarding Russell a cash equalization payment was mathematically incorrect given that Russell was awarded assets with a net value in excess of hers.

[¶20.] In a reply to Kibbe's objections, Russell asserted that regardless of their agreed-upon value of the marital residence at the 2018 trial, Kibbe re-opened the issue of valuation by filing a motion to supplement the record. He also claimed that Kibbe "opened the door" for the court to reconsider the valuation and distribution of the Major Lake property. He then proposed a new valuation of the

Major Lake property at $166,700 based on his claim that Kibbe had placed the property for sale at that amount, and he attached a printout from realtor.com in support. According to Russell, if the court were to accept his view, the new calculation of assets minus debts would require a cash equalization payment to Russell of $11,435.96 ("or more"). Kibbe submitted a response disputing Russell's contention that she had listed the Major Lake property for sale. She further argued that a $166,700 value is unsupportable because it was "an estimated value placed by realtor.com" and "does not constitute an appraisal or a market analysis by a qualified local realtor, based on the actual condition of the property."

[¶21.] On August 6, 2020, the circuit court issued a letter to the parties' counsel indicating that it denied Kibbe's objections "as not being supported by the evidence" and that the court believed its findings and conclusions were "consistent with the evidence presented at [the] hearings." The court entered a judgment on the marital property and debt, ordering that the marital home be valued at $327,000 and that Russell be awarded the marital home and all associated debt. The court further ordered that Kibbe be awarded the Major Lake property. It then stated in its order that the revised joint property exhibit "is modified to accurately reflect the asset and debt of item 10 [the Major Lake property] leaving an equalization payment to [Russell] of $11,435.96."

[¶22.] Kibbe appeals, and we restate her issues as follows:

1. Whether the circuit court erred in valuing the marital residence.

2. Whether the circuit court abused its discretion in including the Major Lake property in the marital estate.

3. Whether remand is necessary on the circuit court's determination that Kibbe owed Russell an $11,435.96 cash equalization payment.

## Analysis and Decision

### 1. *Whether the circuit court erred in valuing the marital residence.*

[¶23.] Kibbe contends the circuit court clearly erred in valuing the marital residence at $327,000. She claims that the circuit court's valuation was not reasonable. In particular, she notes that no witness testified about the $327,000 appraisal; it was simply admitted at the August 2019 hearing without testimony explaining how it would represent the current value of the property. She then contrasts the lack of testimony to support this appraised value with the specific testimony from Russell's witness that the home should be valued at $390,000 based on a comparative market analysis. She further argues the court's valuation is erroneous because in adopting the $327,000 value, the court referred to Exhibit 15, an exhibit which instead identifies Pennington County's 2017 assessed value of the home at $384,300.

[¶24.] On appeal, this Court does "not attempt to place valuations on the assets because that is a task for the trial court as the trier of fact." *Giesen v. Giesen*, 2018 S.D. 36, ¶ 26, 911 N.W.2d 750, 757 (quoting *Geraets v. Geraets*, 1996 S.D. 119, ¶ 7, 554 N.W.2d 198, 200). Rather, we review the circuit court's findings under the clearly erroneous standard of review. *Id.* ¶ 24, 911 N.W.2d at 756. "As a result, this Court 'will overturn the trial court's findings of fact on appeal only when a complete review of the evidence leaves [this] Court with a definite and firm conviction that a

mistake has been made.'" *Schieffer v. Schieffer*, 2013 S.D. 11, ¶ 15, 826 N.W.2d 627, 633 (quoting *Kreps v. Kreps*, 2010 S.D. 12, ¶ 25, 778 N.W.2d 835, 843).

[¶25.] Here, a review of the record does not reveal how the circuit court determined that $327,000 represented the value of the marital residence *at the time of the divorce.* The evidence showed that Pennington County had assessed the value of the property for tax purposes two years earlier at $384,300, and both Russell's and Kibbe's experts opined that the value of the marital residence had increased since the date of the 2018 divorce trial. While the court indicated that it rejected Kibbe's expert's testimony, it did not enter a finding related to Russell's expert's valuation. Moreover, although the parties stipulated at the June 2019 hearing to the admission of the October 2018 appraisal, no witness testified about the basis for that valuation or how it would reflect the value of the property at the time the court granted the divorce in December 2019.

[¶26.] Admittedly, a circuit court is not required to accept either party's proposed valuation of an asset. *Johnson v. Johnson*, 2007 S.D. 56, ¶ 37, 734 N.W.2d 801, 811. A court is also not required to accept an expert's opinion. *Larson v. Larson*, 2007 S.D. 47, ¶ 20, 733 N.W.2d 272, 277. However, it is well settled that the circuit court's valuation must fall "'within a reasonable range of figures,' based on the evidence presented at trial." *Hill v. Hill*, 2009 S.D. 18, ¶ 14, 763 N.W.2d 818, 823 (quoting *Johnson*, 2007 S.D. 56, ¶ 37, 734 N.W.2d at 811). "In divorce proceedings, the date of valuation of the marital estate is generally the date of the granting of the divorce." *Pieper v. Pieper*, 2013 S.D. 98, ¶ 41, 841 N.W.2d 781, 789 (quoting *Duran v. Duran*, 2003 S.D. 15, ¶ 12, 657 N.W.2d 692, 697); *accord Giesen,*

2018 S.D. 36, ¶ 26, 911 N.W.2d at 757. We have recognized an exception to this general rule when "special circumstances are present." *Pieper*, 2013 S.D. 98, ¶ 41, 841 N.W.2d at 789 (quoting *Duran*, 2003 S.D. 15, ¶ 12, 657 N.W.2d at 697). Here, however, the circuit court did not identify the presence of special circumstances that would justify using a 2018 appraisal to determine the value of the parties' marital home at the time of the divorce.

[¶27.] Because neither the testimony at the 2019 evidentiary hearing nor the exhibit specifically referenced by the circuit court in its findings supports the court's valuation of the marital residence, this valuation was clearly erroneous. On remand, the court is directed to revalue this property and enter findings based on evidence of the value of the property at the time of the divorce (absent the identification of special circumstances impacting the date of valuation).

### 2. *Whether the circuit court abused its discretion in including the Major Lake property in the marital estate.*

[¶28.] Kibbe contends the Major Lake property should not have been included in the marital estate because Russell made no contributions toward the property and has no need for support. She further contends it was an abuse of discretion to include the property because she owned it as a tenant in common with Edward; Russell was never liable on the debt; and she made all the mortgage payments after Edward died.

[¶29.] "We review a circuit court's decision to determine whether property is marital or non-marital for an abuse of discretion." *Field v. Field*, 2020 S.D. 51, ¶ 15, 949 N.W.2d 221, 224. An abuse of discretion occurs when there is "a fundamental error of judgment, a choice outside the range of permissible choices, a decision,

which, on full consideration, is arbitrary or unreasonable." *Id.* (quoting *State v. Delehoy*, 2019 S.D. 30, ¶¶ 21-22, 929 N.W.2d 103, 108–09).

[¶30.]     This Court has explained that "South Dakota is an 'all property state,' meaning that 'all property of either or both divorcing parties is subject to equitable division by the court, regardless of title or origin.'" *Midzak v. Midzak*, 2005 S.D. 58, ¶ 22, 697 N.W.2d 733, 739 (quoting *Evans v. Evans*, 1997 S.D. 16, ¶ 23, 559 N.W.2d 240, 245). As provided in SDCL 25-4-44,

> When a divorce is granted, the courts may make an equitable division of *the property belonging to either or both, whether the title to such property is in the name of the husband or the wife.* In making such division of the property, the court shall have regard for equity and the circumstances of the parties.

(Emphasis added.) However, "[b]efore dividing property, the court must classify it as marital or nonmarital." *Ahrendt v. Chamberlain*, 2018 S.D. 31, ¶ 8, 910 N.W.2d 913, 918. Factors to guide the court in classifying and dividing property include: "(1) the duration of the marriage; (2) the value of the property owned by the parties; (3) the ages of the parties; (4) the health of the parties; (5) the competency of the parties to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets." *Id.* ¶ 10 (citation omitted).

[¶31.]     "We have often held that the question of whether to exclude property from the marital estate should be guided by the same factors used to determine an equitable division for a divorcing couple's assets and liabilities." *Field*, 2020 S.D. 51, ¶ 18, 949 N.W.2d at 225. We have further emphasized that "[o]nly where one spouse has made no or de minimis contributions to the acquisition or maintenance

of an item of property and has no need for support[ ] should a court set it aside as [nonmarital] property." *Ahrendt*, 2018 S.D. 31, ¶ 10, 910 N.W.2d at 918 (quoting *Anderson v. Anderson*, 2015 S.D. 28, ¶ 6, 864 N.W.2d 10, 14). This Court's past cases indicate we review a circuit court's finding that one spouse made a de minimis contribution for clear error. *See, e.g.*, *id.* ¶ 13, 910 N.W.2d at 919 (upholding the circuit court's finding of fact that husband made more than a de minimis contribution to the accumulation of assets as not clearly erroneous); *Field*, 2020 S.D. 51, ¶ 28, 949 N.W.2d at 227 (remanding in part for the circuit court to determine whether wife's contributions were merely de minimis); *Halbersma v. Halbersma*, 2007 S.D. 91, ¶ 17, 738 N.W.2d 545, 549–50 (concluding that the circuit court erred in finding husband's contribution to be de minimis).

[¶32.]    Notably, this is not a case wherein one spouse is claiming that he or she assisted the other in maintaining separately owned property by acting as a homemaker or through work outside the home. *See, e.g.*, *Anderson*, 2015 S.D. 28, ¶¶ 8–9, 864 N.W.2d at 14–15 (noting wife's contribution as a mother and a homemaker); *Ahrendt*, 2018 S.D. 31, ¶ 13, 910 N.W.2d at 919 (noting husband's indirect contribution through work efforts outside the home). Also, there is no evidence that Russell's employment allowed Kibbe to acquire or maintain the Major Lake property. Russell did, however, present evidence supporting that the $1,000 and $4,000 payments related to the property were made from marital funds. Nevertheless, the nature of this contribution is uncertain, and we are unable to determine whether these payments were made with the intent to acquire equity in

the Major Lake property for either the couple or Kibbe individually, or whether the payments were intended to be a marital loan to Kibbe's father.

[¶33.] A review of the circuit court's findings in their totality indicates that the court considered many of the factors relevant to the classification and division of property, including the duration of the marriage, the age and health of the parties, their competency to earn a living, and the value of their assets. The court also determined that Russell was not in need of support. But as to the classification of the Major Lake property as marital, the court made only a general finding that both parties contributed to the accumulation of all assets and debts. The court did not make specific findings regarding whether or how both parties, or Russell in particular, contributed to the accumulation or maintenance of this property or whether those contributions were more than de minimis. Because remand is necessary in this case on issue one related to the value of the marital home, and also necessary on issue three as explained below, we further direct the circuit court to apply the legal factors outlined above and enter findings specifically addressing why the Major Lake property should be considered as marital or nonmarital.

### 3. Whether remand is necessary on the circuit court's ultimate determination that Kibbe owes Russell an $11,435.96 cash equalization payment.

[¶34.] Kibbe asserts that the court erred in ordering her to make an equalization payment to Russell given the court's property division awarding Russell the greater net value in assets. Relying on the revised joint property exhibit, Kibbe further claims that the circuit court failed to decrease the equity in the Major Lake property by the value of the mortgage on the property despite

specifically indicating in its findings and judgment that she was responsible for the associated debts. She therefore contends that a remand is necessary to correct these errors.

[¶35.] Kibbe's argument on appeal assumes the joint property exhibit attached to the court's April 2020 findings and conclusions reflects the court's ultimate valuation and division of the parties' property and debts. But it is clear from the court's judgment that this joint property exhibit *does not* represent the court's final valuation and division of the marital estate. In the judgment, the court did not actually update the latest version of the joint property exhibit; rather, the circuit court simply included a provision in the judgment stating that the "JPE is modified to accurately reflect the asset and debt of item 10 [the Major Lake property] leaving an equalization payment to [Russell] of $11,435.96."

[¶36.] Russell contends the circuit court did in fact award Kibbe the $62,792.12 mortgage debt on the property because the court's judgment indicated that it was relying on amounts different than those reflected on the exhibits. He further asserts that the cash equalization payment in the amount of $11,435.96 is consistent with his suggestions to the court in response to Kibbe's objections, in which he asserted that the Major Lake property should be valued at $166,700 and that Kibbe be awarded the property and all associated debts including the $62,792.12 mortgage.[4]

---

4.     The revised joint property exhibit attached to the court's findings and conclusions shows an award to Kibbe of $214,479.25 in total assets, which included $65,000 for her one-half interest in the Major Lake property. However, it appears from the court's indication that it was modifying the

(continued . . .)

[¶37.] However, there are multiple problems with the circuit court's ultimate determination that Kibbe owes Russell an $11,435.96 cash equalization payment. First, there was no evidence submitted during the divorce trial or the August 2019 hearing to support a valuation of the Major Lake property at $166,700. While Russell attached a portion of a website page from realtor.com in his May 2020 responsive filing, the circuit court did not enter any findings on this increased valuation, which Kibbe disputed. Second, it is undisputed that Kibbe holds only a one-half ownership interest in the property. Therefore, the circuit court could not award her 100% of the value.

[¶38.] Third, although the parties designated the $1,000 cash down payment and $4,000 payment to Iseman Homes as marital *debt* on their joint property exhibit, the testimony at the divorce trial made clear that such payments were not debts. Russell acknowledged at trial when questioned by his counsel that it was not actually a debt allocation but rather "reimbursement" that he was seeking from Kibbe for his share of the marital funds that she used to purchase the property. If the property had been set aside as nonmarital, then these amounts could

_____

(. . . continued)

joint property exhibit that the court used Russell's newly proposed value of $166,700 for this property and awarded Kibbe the entire value rather than her one-half interest. This would increase her total assets by $101,700 for a total of $316,179.25. As for Kibbe's debts, the revised joint property exhibit assigned debt to her in the amount of $74,062.84. By adding the $62,792.12 outstanding mortgage to Kibbe's total debts, this amount would be increased to $136,854.96. When applying Russell's numbers and recalculation, Kibbe's net value of marital assets would then be $179,324.29. It appears the court arrived at an $11,435.96 cash equalization payment by subtracting Russell's net value of assets in the amount of $156,452.37 from his newly proposed $179,324.29 valuation of Kibbe's net assets, and then by dividing that amount by two.

conceivably be treated as "debts" Kibbe owes to Russell. But once the property is treated as a marital asset, these payments expended by Kibbe toward the purchase of the property are reflected in the parties' equity in this asset, all of which is then subject to the court's equitable division. Thus, in finding the Major Lake property to be marital, the circuit court should not have treated these payments as outstanding debts.

[¶39.] Because the circuit court's determination that Kibbe owes Russel an $11,435.96 cash equalization payment is based on the clear errors outlined above, the equalization payment must be recalculated. Prior to doing so and in accord with this Court's ruling on the first two issues above, the circuit court must revalue the marital home and reconsider the classification and valuation of the Major Lake property, and enter supporting findings accordingly.

[¶40.] Reversed and remanded.

[¶41.] JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.