#25311, #25321-aff in pt, rev in pt & rem-JKK

**2010 SD 39**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MICHAEL LOVEJOY,                                  Plaintiff and Appellant,

    v.

MILDRED M. LOVEJOY,                              Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE FIRST JUDICIAL CIRCUIT
CLAY COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE GLEN W. ENG
Judge

\* \* \* \*

GREGORY T. BREWERS of
Strange, Farrell, Johnson & Brewers, PC          Attorneys for plaintiff
Sioux Falls, South Dakota                        and appellant.

CRAIG K. THOMPSON                                Attorney for defendant
Vermillion, South Dakota                         and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 22, 2010

OPINION FILED **05/12/10**

#25311, #25321

KONENKAMP, Justice

[¶1.]    In this divorce appeal, the husband challenges the custody decision, the general and rehabilitative alimony awards, the debt division, and the attorney's fee award. By notice of review, the wife appeals the attorney's fee award. We find no abuse of discretion in the custody and visitation decision, the debt division, and the attorney's fee awards. As to the award of general and rehabilitative alimony, we reverse and remand because (1) the circuit court's findings fail to explain how it computed the husband's ability to pay alimony, (2) the wife's expenditures supporting her claim for alimony include children's expenses which must be excluded, and (3) the rehabilitative alimony award lacks a limitation period.

## Background

[¶2.]    Mike and Mildred (Millie) Lovejoy were married on February 14, 1992. Millie had two children from a previous relationship: Misty, born August 16, 1989, and Joey, born February 14, 1991. Mike adopted Misty and Joey. Millie and Mike then had two sons, Collin, born January 4, 1996, and Kodie, born April 24, 1998. Before their marriage, Millie lived in Sioux Falls with her parents. Her formal education ended at the eighth grade. She suffers from lifelong rheumatoid arthritis. As the circuit court found, pain and swelling from the arthritis afflicts her hands, elbows, hips, and feet. Mike is a partner in his family's farming operation. After the wedding, Mike, Millie, Misty, and Joey moved into a trailer house on the farm. They later moved into the main house when Mike's parents retired, but his parents kept ownership of the home.

[¶3.] Mike and Millie decided that Millie would stay home with the children while Mike farmed and periodically worked as a truck driver. Millie eventually obtained her general education degree (GED). Once the younger children began attending school, Millie served as a substitute teacher and later as a daycare worker in Vermillion. She earned minimum wage. Mike and Millie owned 19 acres of tillable land of the 1,050 acres Mike farmed. He leased 249 acres from his parents and the rest from third parties.

[¶4.] In March 2008, Mike sued Millie for divorce alleging irreconcilable differences or, in the alternative, extreme cruelty. She answered and counterclaimed on the same grounds. Millie moved for temporary custody of the minor children, child support, and alimony. Misty was no longer a minor and lived outside the home. Joey was a senior in high school. Mike also sought custody, but only of Collin and Kodie. He disinherited Misty and Joey. Temporary custody of the minor children was granted to Millie, along with child support and temporary alimony. Dr. Andre Clayborne completed a home study evaluation in February 2009.

[¶5.] Following the divorce trial, but before the court issued findings of fact, conclusions of law, and a judgment, Mike sought to offer evidence of a debt he failed to present during trial. Upon granting his request, the court issued findings of fact and conclusions of law, a judgment and decree of divorce, and a money judgment. Millie was awarded primary physical custody of the children, general and rehabilitative alimony, and attorney's fees. Mike appeals asserting that the court abused its discretion when it (1) granted Millie primary physical custody of the

minor children and less visitation than recommended by the custody evaluator, (2) awarded Millie $1,750 per month in general alimony and $500 per month in rehabilitative alimony, (3) divided the debts inequitably, and (4) awarded Millie attorney's fees and costs. In her notice of review, Millie asserts that the court abused its discretion when it failed to award all her requested attorney's fees.* Because we find no abuse of discretion or clearly erroneous fact findings pertaining to Mike's Issues 1 and 4, and Millie's notice of review issue, we affirm those questions without discussion. They were decided in accord with well-settled principles. *See* Fuerstenberg v. Fuerstenberg, 1999 SD 35, 591 NW2d 798; DeVries v. DeVries, 519 NW2d 73 (SD 1994).

## Analysis and Decision

### Alimony

[¶6.] Mike asserts that the court abused its discretion when it awarded Millie $1,750 per month in general alimony and $500 per month for rehabilitative alimony. Mike argues that the court improperly considered expenses related to the children when it awarded Millie general alimony and abused its discretion when it awarded Millie more than she requested. Mike further contends that the court failed to consider his ability to pay these two monthly sums.

---

\* Standard of Review: We review a court's custody decision, property division, alimony award, and attorney's fees award under the abuse of discretion standard. Maxner v. Maxner, 2007 SD 30, ¶¶10-12, 730 NW2d 619, 622 (citations omitted). The court's findings of fact are reviewed for clear error. Arneson v. Arneson, 2003 SD 125, ¶13, 670 NW2d 904, 909-10 (citation omitted). Conclusions of law, however, are reviewed de novo. *Id.*

[¶7.] General alimony is intended to assist the recipient in providing for food, clothing, housing, and other necessities. Zepeda v. Zepeda, 2001 SD 101, ¶21, 632 NW2d 48, 55 (citation omitted). Millie, as the one who sought support, had to establish her need for alimony and Mike's ability to pay. *See id.* (citation omitted). In deciding whether alimony is warranted, the court should consider: (1) the length of the marriage; (2) each party's earning capacity; (3) their financial conditions after the property division; (4) each party's age, health, and physical condition; (5) their station in life or social standing; and (6) the relative fault in the termination of the marriage. *Id.*

[¶8.] First, the court did not award Millie more alimony than requested. In her pretrial brief to the circuit court, Millie asked for "permanent general alimony in an amount the court finds reasonable, but preferably *no less than* $1,500 per month." (Emphasis added.) Second, even if the court awarded Millie more than she requested, an alimony award is discretionary, exercisable either upward or downward. We find no abuse of discretion in the award of general alimony merely because it was above Millie's bottom-line suggestion.

[¶9.] Mike complains that the court improperly considered child-related expenses in awarding general alimony. "[A]limony and child support are separate concepts" and must not be merged. Schabauer v. Schabauer, 2003 SD 146, ¶17, 673 NW2d 274, 278. An alimony award should reflect "what was required for a suitable allowance to [the spouse] based upon the analysis of the factors applicable to awarding alimony." *Id.* ¶18. Such award must not consider the children in the home. *Id.* ¶17. In Millie's budget exhibit, she indicated her total monthly expenses

to be $3,036, with a monthly shortfall of $1,673. Taking into account her education level and her partially disabling condition from arthritis, Millie established her need for alimony. Yet there is no question that some of the expenses she listed included money spent on her children. For example, her monthly cell phone expenditure of $264 was for five cell phones: one for herself and one for each of the four children. Millie also admitted at trial that her listed clothing expenditure was for the children. In its findings of fact, nonetheless, the trial court simply reiterated Millie's monthly expenses as she reported them at $3,036. There was no finding on what her actual expenses were for the purposes of computing alimony, with child related expenses removed. Thus, the court's findings in this regard were clearly erroneous.

[¶10.]        We also find problematic the lack of findings to support Mike's ability to pay the alimony awarded to Millie. In determining actual income for purposes of awarding alimony, trial courts should make findings on all the relevant economic circumstances. In its conclusions of law, however, the court simply listed the factors relevant to an award of general alimony and stated that "the court has weighed the same." But the court made no specific finding on each factor. It never identified the amount of Mike's income from farming and trucking. We realize that this is no simple task, for, as other courts have noted, self-employed individuals have some "ability to control and regulate their income." *See* Ugarte v. Ugarte, 608 So2d 838, 840 (FlaCtApp 1992). And the task is made more complicated here, as the trial court realized, by the fact that Mike and his father "comingled assets." Indeed,

Mike's claimed net income may be misleading: the court found Mike's "rental" arrangement with his family to be "disingenuous."

[¶11.] In an apparent effort to bridge these difficulties, the circuit court generally declared that Mike's "earning capacity is wide" and Mike "has always been able to provide for his family." One of its conclusions of law states, "This court cannot divide property that [Mike] does not own, but it can require that alimony be paid so [Millie] can live at a level less than poverty." Yet we have no way of determining from these findings whether the alimony awards were reasonable. We afford considerable weight to a circuit court's exercise of discretion, but we can only evaluate that discretion by reviewing the court's detailed findings. Therefore, we remand for the court to determine Mike's ability to pay alimony, with explicit findings on his income.

[¶12.] With respect to rehabilitative alimony, the court awarded Millie "an additional $500 monthly . . . if she seeks further education within the next three (3) years or by March 12, 2012." Mike contends that before trial Millie failed to request rehabilitative alimony and thus the court abused its discretion when it allowed Millie to testify about her educational plans. Millie submitted a pretrial brief in support of her alimony request in which she informed the court that she desired to obtain additional education. She wanted to attend Western Iowa Technical Community College to obtain an associate degree in Early Childhood Education. She listed the costs per credit and the time it would take to obtain the degree. In total she requested $11,600 in rehabilitative alimony. We find no abuse of

discretion in the court's decision to allow evidence on the issue of rehabilitative alimony.

[¶13.]     Mike also asserts that the evidence does not support Millie's need for rehabilitative alimony. Millie was the primary caretaker during the marriage, and by the parties' agreement she remained home while the two younger children were not yet school age. Thereafter, she worked for minimum wage. The court found that Millie's earning capacity would be limited even if she obtained further education. We find no abuse of discretion in the court's decision to award Millie rehabilitative alimony.

[¶14.]     Mike next argues that the language of the court's award fails to set a duration for the requirement that he pay rehabilitative alimony. Under the court's ruling, if Millie begins her education within three years, Mike is required to pay Millie an extra $500 a month. But by the terms of the court's order, these payments could last as long as it takes Millie to complete her education. This could mean that if Millie takes a small number of credits over a number of years, Mike could conceivably be obligated to pay her $500 per month indefinitely. Although Mike did not object to the court's findings of fact and conclusions of law in order to give the court an opportunity to rectify this problem, because we are already remanding for further consideration, the court is directed to place a limitation on the duration of the rehabilitative alimony.

### Debt Division

[¶15.]     After trial, Mike moved the court to allow admission of evidence related to his sealed grain debt of $44,507.60. Millie objected, and the court held

two hearings. It ultimately allowed the evidence and then distributed the debt, allocating $12,250 to Millie. The court found the fact that Mike disclosed this debt after trial suspicious because the evidence was advantageous to him and he could have obtained it earlier considering his trial testimony that he knew his computer accounting system and the farm's books. Mike does not challenge the overall distribution of debts. Rather, he claims the court abused its discretion when it imposed on him 75% of the obligation to repay this particular debt. He maintains that the omission of the debt evidence was inadvertent and that equity requires an equal split. He further argues that the court penalized him for "calling to the court's attention the inadvertent omission of a valid, existing marital debt[.]"

[¶16.]      We review a court's property division for an abuse of discretion. *Maxner*, 2007 SD 30, ¶12, 730 NW2d at 622 (citation omitted). In dividing marital property, the court is to consider the equity and circumstances of the parties. Endres v. Endres, 532 NW2d 65, 71 (SD 1995). Here, the circumstances failed to satisfy the circuit court that the late disclosure was entirely blameless. Considering the relative circumstances of the parties, we see no abuse of discretion in the court's decision to allocate to Mike a greater portion of the omitted sealed grain debt.

[¶17.]      Both parties request appellate attorney's fees. Considering "the property each party owns; their relative incomes; the nature of their assets, fixed or liquid; and whether either party unreasonably prolonged the divorce," each party will be responsible for their own appellate attorney's fees. *See Zepeda*, 2001 SD 101, ¶28, 632 NW2d at 57 (citations omitted).

[¶18.]      Affirmed in part, reversed in part, and remanded.

[¶19.]    GILBERTSON, Chief Justice, and ZINTER, MEIERHENRY, and SEVERSON, Justices, concur.