#25850-a-JKK

2011 S.D. 83

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JULIE A. URBANIAK,                        Plaintiff and Appellee,

    v.

ROBERT I. URBANIAK,                       Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN J. DELANEY
Judge

* * * *

PATRICIA A. MEYERS
Rapid City, South Dakota                  Attorney for plaintiff
                                          and appellee.

RENA M. HYMANS
Sturgis, South Dakota                     Attorney for defendant
                                          and appellant.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 03, 2011

OPINION FILED 12/07/11

#25850

KONENKAMP, Justice

[¶1.] Upon issuing a divorce decree, the trial court awarded Julie A. Urbaniak $500 per month in alimony for eight years and attorney's fees. In granting the alimony, the court considered Robert I. "Ike" Urbaniak's social security and military disability payments, but did not order attachment of those benefits. Ike appeals, arguing that the trial court erred in considering his disability benefits in determining alimony. He also contends that the court abused its discretion in awarding Julie alimony and attorney's fees and costs. We affirm.

## Background

[¶2.] Ike joined the Army in 1989. In a motor vehicle accident while stationed in Egypt, he suffered a wrist injury and post-traumatic stress disorder. He was honorably discharged in 1996. Julie and Ike married in 2002. During the first year, both worked and contributed all their earnings to the marriage. Thereafter, Ike was unemployed and Julie supported the couple with her earnings. Throughout the marriage, Ike periodically struggled with drug and alcohol abuse.

[¶3.] Ike and Julie purchased and remodeled a home in 2003. Julie paid for most of the remodeling costs with money she inherited from her family. Ike and Julie attempted to have children for two or three years. But Julie eventually discovered that Ike was unable to have children. She was not aware of this when they married.

[¶4.] Ike has a high school education. He attended college but never obtained a degree. In 2006, the Department of Veterans Affairs (VA) designated Ike

-1-

as one-hundred percent disabled. Julie had assisted him in applying for VA disability benefits, hiring an attorney, and serving as Ike's protective payee.

[¶5.] Ike receives $984 per month in social security disability benefits and $2,823 per month in VA disability benefits. He also received $20,000 in social security back pay, which the couple used to pay credit card and other debts in order to qualify for a loan. Ike was not eligible for military retirement benefits because he served less than twenty years. As protective payee, Julie managed all household finances and monitored Ike's medication intake. Toward the end of the marriage, Julie also performed most of the household chores.

[¶6.] Ike has several mental and physical health problems. He twice overdosed on pain medications. His family, including Julie, suspected that Ike was frequently overmedicating. Ike was obsessive compulsive, constantly monitoring Julie's location when she was not at home. Without informing Julie, Ike often cancelled or failed to attend therapy sessions, medical appointments, and individual counseling. Julie tried to introduce Ike to new hobbies and common interests without success.

[¶7.] Julie has a high school education and is employed as a cafeteria worker, earning $12.42 per hour, forty hours per week. She also has a retirement fund currently worth $18,053.26. Julie is in good health.

[¶8.] After seven years of marriage, Julie sued for divorce in 2009. Their relationship had deteriorated. Both Ike and Julie had become verbally abusive to each other. Julie discovered that Ike had an online girlfriend. He insisted that Julie was mishandling his money as protective payee. Ike continuously threatened

to lock Julie out of the house and, on one occasion, choked her during an argument. He also threatened to kill her on several occasions.

[¶9.] At the time of the divorce, Julie was forty years old and Ike was thirty-nine. They had no children. Julie earned about $1,500 per month and Ike received $3,807 per month in disability payments. He had no other income, and his disability benefits would decrease by about $150 per month after the divorce became final.

[¶10.] Following a trial, the circuit court divided the marital property and debt. Julie was awarded $500 per month in alimony for eight years, subject to termination on her death or remarriage. The court considered Ike's receipt of disability benefits in making this decision, but noted that the alimony award was not to be construed as an attachment of any disability payments. The court also awarded Julie $5,792.12 in costs and attorney's fees, considering the complex nature of the legal issues and Ike's misconduct during the marriage. Ike appeals, arguing that the trial court erroneously considered his disability benefits in determining alimony. He also asserts that the court abused its discretion in awarding Julie alimony and costs and attorney's fees.

*VA Disability Benefits*

[¶11.] Ike maintains that the trial court erred in considering his VA disability benefits in awarding alimony. He contends that the United States Supreme Court's decision in *Mansell v. Mansell*, 490 U.S. 581, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989) controls this legal question. He points out that he served in the military and incurred his service-connected disability before he married Julie. Ike does not have

direct access to the bank account where his disability benefits are deposited. Only his current payee (Jeff Denison of U.S. Bank) has direct control of the benefits.

[¶12.] Julie concedes that the benefits may not be levied, seized, or attached, but notes that the circuit court merely considered Ike's receipt of military disability benefits. Julie contends that federal law does not preclude a court's consideration of such benefits as a source of income relevant to Ike's ability to pay alimony.

[¶13.] We review decisions on alimony for an abuse of discretion. *Billion v. Billion*, 1996 S.D. 101, ¶ 14, 553 N.W.2d 226, 230. But we review questions of law bearing on an alimony award de novo. *Oman v. Oman*, 2005 S.D. 88, ¶ 4, 702 N.W.2d 11, 12. Military retirement pay and military disability benefits have significant differences. Retirement benefits are for military service members who serve for a specific period, usually twenty years or more. *See., e.g.*, 10 U.S.C. § 3911 (Army); 10 U.S.C. § 6323 (Navy and Marine Corps). The amount of retirement pay a veteran is eligible for is determined according to the number of years served and the rank achieved. 10 U.S.C. § 1401.

[¶14.] On the other hand, a military service member who becomes disabled as a result of military service is eligible for disability benefits. 38 U.S.C. § 1131 (peacetime disability benefits). The amount of disability benefits a veteran is eligible for is determined according to the seriousness of the disability and the degree to which the veteran's ability to earn a living has been impaired. 38 U.S.C. §§ 1134 and1114. Disability benefits are not assignable and are exempt from attachment, levy, seizure, and taxation. 38 U.S.C. § 5301(a)(1) (emphasis added). A military retiree who is also disabled may receive disability benefits (and incur tax-

exempt status) only if he or she waives a corresponding amount of military retirement pay.  38 U.S.C. § 5304; 38 C.F.R. § 3.750.

[¶15.]     In 1981, the United States Supreme Court held that federal law precluded state courts from treating military *retirement* pay as community property in divorce proceedings.  *McCarty v. McCarty*, 453 U.S. 210, 223, 101 S. Ct. 2728, 2736, 69 L. Ed. 2d 589 (1981) (emphasis added), *superseded by statute*, 10 U.S.C. § 1408.  According to the *McCarty* Court, Congress intended all military *retirement* benefits to go directly to military service members and not to their former spouses.  *Id.* at 228 (emphasis added).  In direct response to the *McCarty* decision, Congress passed the Uniform Services Former Spouses' Protection Act (USFSPA), which authorizes state courts to treat retirement pay as community property.  10 U.S.C. § 1408(c)(1).  The USFSPA did not include disability benefits in the definition of disposable retirement benefits.  *See* 10 U.S.C. § 1408(a)(4)(B).

[¶16.]     In 1989 the United States Supreme Court interpreted the USFSPA. *See Mansell*, 490 U.S. 581, 109 S. Ct. 2023.  The *Mansell* decision acknowledged the USFSPA's affirmative grant of authority to treat retirement pay as community property.  *Id.* at 588.  But the Court held that state courts may not treat military retirement pay waived by retirees in order to receive veterans' disability benefits as divisible property.  *Id.* at 594-95.  The Court did not extend its holding to military disability benefits received by service members who are not also eligible for retirement pay.  *See id.*  Furthermore, the *Mansell* Court addressed the division of benefits as marital property subject to division and not specifically the use or consideration of benefits for spousal support.  *See id.* at 588-90, 594-95.

[¶17.] In this case, Ike receives $2,823 in VA disability benefits each month. He was not eligible for military retirement pay (and therefore had not waived retirement pay in order to receive disability benefits) because Ike served less than twenty years in the Army. Thus, despite Ike's argument otherwise, the *Mansell* decision does not apply here.[1]

[¶18.] Ike's disability benefits are exempt from attachment, levy, seizure, and taxation. 38 U.S.C. § 5301(a)(1). The trial court was therefore unable to attach Ike's disability benefits to pay an alimony award. Yet the court did not attach Ike's benefits but instead considered them in determining alimony. In both its conclusions of law and its order, the court specifically indicated that the alimony award should not be construed as an attachment of any disability benefits. The court reasoned that although federal law prohibits attachment of Ike's military disability benefits, the law does not dictate what happens to the money once it is in Ike's possession and does not prevent a court from ordering a service member to make alimony payments (without ordering that the payments come from a specific source).

---

1. Ike also claims that this Court's decision in *Hisgen v. Hisgen*, 1996 S.D. 122, 554 N.W.2d 494 is applicable. However, like the *Mansell* decision, *Hisgen* addressed the divisibility of military disability benefits received after waiving a corresponding portion of retirement pay (i.e., the service member in that case was eligible for both retirement pay and disability benefits). *Hisgen*, 1996 S.D. 122, ¶¶ 2, 6, 554 N.W.2d at 495-96. Furthermore, the husband and wife in *Hisgen* signed a property settlement agreement, and this agreement affected this Court's analysis of the case. *Id.* ¶ 10. Thus, the *Hisgen* decision does not directly answer the issue before us here.

[¶19.]     An "overwhelming majority of courts" have held that VA disability payments may be considered as income in awarding spousal support. *In re Marriage of Morales*, 214 P.3d 81, 85 (Or. Ct. App. 2009). These courts conclude that federal law does not prohibit an award of alimony against a spouse receiving military disability pay and, once alimony is awarded, federal law will not relieve the paying spouse from paying such alimony obligations, even if most of the veteran's income consists of military disability benefits.[2] In contrast, one court has found that the *Mansell* decision and 10 U.S.C. § 1408 protect VA disability benefits from consideration in an alimony determination. *See Ex parte Billeck*, 777 So. 2d 105, 108-09 (Ala. 2000). In *Billeck*, the Alabama Supreme Court acknowledged the substantial disagreement with its position, but concluded that "other state courts have circumvented the mandates of the *Mansell* decision and § 1408 by allowing trial courts to *consider* veteran's disability benefits in awarding alimony." *Id* at 108.[3]

---

2.     *See, e.g., Clauson v. Clauson*, 831 P.2d 1257, 1263 n.9, 1264 (Alaska 1992); *Murphy v. Murphy*, 787 S.W.2d 684, 685 (Ark. 1990); *Allen v. Allen*, 650 So. 2d 1019, 1020 (Fla. Dist. Ct. App. 1994); *Jones v. Jones*, 780 P.2d 581, 584 (Haw. 1989); *In re Marriage of Howell*, 434 N.W.2d 629, 632-33 (Iowa 1989); *Davis v. Davis*, 777 S.W.2d 230, 232 (Ky. 1989); *Riley v. Riley*, 571 A.2d 1261, 1266 (Md. 1990); *Steiner v. Steiner*, 788 So. 2d 771, 778-79 (Miss. 2001); *Morales*, 214 P.3d at 85-86; *Parker v. Parker*, 484 A.2d 168, 169-70 (Pa. Super Ct. 1984); *Repash v. Repash*, 528 A.2d 744, 746 (Vt. 1987); *Weberg v. Weberg*, 463 N.W.2d 382, 384 (Wis. Ct. App. 1990).

3.     But even *Billeck* gives no succor to Ike's position. That case is distinguishable because *Billeck*, like *Mansell* and unlike this case, involved a retired member of the armed services actually receiving veteran's disability benefits in lieu of military-retirement pay. *Cf. Miller v. Miller*, 10 So. 3d 570, 575 (Ala. Civ. App. 2008).

[¶20.] *Billeck* takes a broad reading of *Mansell*. But a narrow interpretation is more in step with the criterion the United States Supreme Court uses in reviewing whether federal law preempts state domestic relations law. The Supreme Court in *Mansell* noted its reluctance to find federal preemption of state domestic relations law, stating, "[b]ecause domestic relations are preeminently matters of state law, we have consistently recognized that Congress, when it passes general legislation, rarely intends to displace state authority in this area." *Mansell*, 490 U.S. at 587, 109 S. Ct. at 2028 (citations omitted). "Thus we have held that we will not find preemption absent evidence that it is 'positively required by direct enactment.'" *Id.* (quotation omitted). To date there has been no direct enactment prohibiting what the circuit court did here. Accordingly, we concur with the better view and adopt the rationale from the majority of jurisdictions that have found that no federal law demonstrates a clear intent to prohibit state courts from considering VA disability benefits when deciding alimony.

*Social Security Disability Benefits*

[¶21.] Ike argues that the trial court erred in considering his social security disability benefits in awarding alimony. He asserts that federal law prohibits the levy, attachment, or seizure of social security benefits, yet concedes that there is also an exception for alimony and child support. Ike believes it is significant that his social security benefits are placed with a payee who testified that Ike may be financially unable to cover an alimony award. He also contends that Julie already benefited from his social security payments because the couple spent a substantial

amount of back-pay in a very short time with little to show for it. Ike claims Julie did not account for where this money went.

[¶22.] In response, Julie maintains that federal law provides an exception that allows attachment of social security benefits for alimony. Julie also contends that she accounted for the social security back-pay when she testified that they used the money to pay off credit cards and other debts so that they could qualify for a VA loan for a new home.

[¶23.] Generally, social security benefits are not assignable or "subject to execution, levy, attachment, garnishment, or other legal process[.]" 42 U.S.C. § 407(a). Notwithstanding this rule, however, social security benefits are subject to "any . . . legal process brought[] by a State agency . . . to provide child support or alimony." 42 U.S.C. § 659(a).

[¶24.] Ike receives $984 per month in social security disability benefits. The circuit court did not attach the benefits but merely considered them in determining whether Julie was entitled to alimony. Given that Ike's social security disability benefits are subject to garnishment for alimony under federal law, the court did not err in merely considering the benefits in determining whether an alimony award was appropriate.

*Alimony*

[¶25.] Ike argues that the trial court abused its discretion when it granted Julie $500 per month in alimony for eight years because Julie did not demonstrate her need for alimony or Ike's ability to pay it. Ike contends that the marriage was relatively short, that he is disabled and unable to earn a living, and that he received

much of the marital debt under the court's property distribution. Ike also contends that Julie is healthy, able to earn a living, and received little debt in the property distribution. Ike acknowledges that he was found to be at fault in the termination of the marriage, but points out that the divorce was granted upon the ground of irreconcilable differences.

[¶26.] Julie responds that she earns approximately $1,500 per month while Ike receives $3,807 per month in VA and social security disability payments. She also points out that Ike received the marital home and that she received debt under the court's property distribution. In addition, Julie notes that Ike was at fault in the termination of the marriage because Ike deceived Julie regarding his inability to have children, initiated a relationship with another woman before they were divorced, and was verbally and emotionally abusive.

[¶27.] "Where a divorce is granted, the court may compel one party to make such suitable allowance to the other party for support during the life of that other party or for a shorter period . . . having regard to the circumstances of the parties represented[.]" SDCL 25-4-41. "General alimony is intended to assist the recipient in providing for food, clothing, housing, and other necessities." *Lovejoy v. Lovejoy*, 2010 S.D. 39, ¶ 7, 782 N.W.2d 669, 672. Trial courts consider the following factors when determining whether alimony is warranted:

> (1) the length of the marriage; (2) each party's earning capacity; (3) their financial conditions after the property division; (4) each party's age, health, and physical condition; (5) their station in life or social standing; and (6) the relative fault in the termination of the marriage.

*Id.* "A party requesting alimony has the burden of proving a need for support and that a former spouse has sufficient means and abilities to provide for part or all of that need." *Schabauer v. Schabauer*, 2003 S.D. 146, ¶ 6, 673 N.W.2d 274, 276.

[¶28.]    The circuit court entered detailed findings and conclusions on the factors relevant to an alimony award. Both Ike and Julie are similar in age and social standing. The marriage was relatively short. Julie is able bodied and currently earns about $1,500 per month. Ike is disabled but receives $3,807 per month in VA and social security disability payments. During the marriage, Julie contributed all her earnings and performed many of the household duties and carried out all financial responsibilities. Ike conceded his fault in the termination of the marriage. Julie had frequently attempted to save the marriage. Considering these facts, we cannot say that the circuit court abused its discretion in finding that Julie demonstrated a need for and Ike's ability to pay alimony.

*Attorney's Fees*

[¶29.]    Ike argues that the trial court abused its discretion when it ordered him to pay Julie's attorney's fees and costs in the amount of $5,792.12. Ike points out that the trial lasted only one day and that, other than the disability benefits question, the legal issues were not complex.

[¶30.]    Julie maintains that the question whether Ike's disability benefits may be considered was a challenging legal issue that required briefing. Julie also argues that Ike's monthly income through disability payments is more than Julie's monthly income. Julie concedes, however, that the value of the property was small, the pleadings were standard, and the trial was one day.

[¶31.]        A trial court may award attorney's fees in cases involving divorce,

support, or alimony.  SDCL 15-17-38.  We generally use a two-step analysis in

reviewing an award of attorney's fees:

> First, the court must determine what constitutes a reasonable
> attorney's fee.  This requires consideration of (1) the amount and
> value of the property involved, (2) the intricacy and importance
> of the litigation, (3) the labor and time involved, (4) the skill
> required to draw the pleadings and try the case, (5) the
> discovery utilized, (6) whether there were complicated legal
> problems, (7) the time required for the trial, and (8) whether
> briefs were required.  Second, it must determine the necessity
> for such fee.  That is, what portion of that fee, if any, should be
> allowed as costs to be paid by the opposing party.  This requires
> consideration of the parties' relative worth, income, liquidity,
> and whether either party unreasonably increased the time spent
> on the case.

*Edinger v. Edinger*, 2006 S.D. 103, ¶ 17, 724 N.W.2d 852, 858.

[¶32.]        The trial court found that Julie incurred substantial attorney's fees.

As to the reasonableness of those fees, the court also found that the case involved

complex legal issues that required briefing.  In addition, the court found that Julie

had few resources and less income to cover her attorney's fees.  The court also noted

Ike's misconduct and its impact on the marriage.  On this record, we cannot say

that the trial court abused its discretion in awarding Julie attorney's fees.

[¶33.]        Julie also seeks an award of appellate attorney's fees and expenses in

the amount of $6,694.32.  Considering the above factors, we award $3,000.

[¶34.]        Affirmed.

[¶35.]        GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and

WILBUR, Justices, concur.