#29810-r-SRJ
**2022 S.D. 74**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ALICE MARIE COOK,                              Plaintiff and Appellee,

    v.

VERNON ROY COOK,                              Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
LYMAN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE M. BRIDGET MAYER
Judge

* * * *

DAVA A. WERMERS
Mitchell, South Dakota                         Attorney for defendant
                                 and appellant.

ROSE ANN WENDELL
Pierre, South Dakota                           Attorney for plaintiff
                                 and appellee.

* * * *

CONSIDERED ON BRIEFS
MAY 25, 2022
OPINION FILED **12/07/22**

JENSEN, Chief Justice

[¶1.] The circuit court granted Alice Cook and Vernon Cook a divorce on the grounds of irreconcilable differences. The court equitably divided the marital property and ordered Vernon to pay Alice a cash payment of $201,830. The cash equalization payment included $140,000 for marital assets that the court found Vernon had dissipated in violation of SDCL 25-4-33.1. The court also ordered Vernon to pay Alice permanent alimony of $1,500 per month. Vernon appeals, arguing that the circuit court abused its discretion by including his military retirement pay and veteran disability benefits as marital assets subject to equitable division and clearly erred in finding that he dissipated marital assets in violation of SDCL 25-4-33.1. Vernon also claims the circuit court's alimony award was an abuse of discretion. We reverse and remand.

## Facts and Procedural History

[¶2.] Vernon and Alice were married on July 12, 1993. The parties separated in April 2019 after Alice left the marital home in Lyman County. At the time of trial, Vernon was 79 years old and in reasonably good physical health but had significant mental health conditions. Alice was 78 years old and had health issues that included possible dementia.

[¶3.] Prior to their marriage, Vernon served in the U.S. Army Special Forces (Green Beret). He concluded his military career in 1979. Vernon suffers from severe and chronic post-traumatic stress disorder (PTSD) and major depression stemming from combat military service in Vietnam. He suffered nightmares and daymares, often lashing out at Alice in anger and isolating himself in his bedroom

for days on end. Vernon had previously been determined to be 100% combat-related disabled because of these conditions.

[¶4.]     Throughout their lengthy marriage, Alice was a homemaker and emotionally and physically supported Vernon as he suffered with his disability. She worked outside the home as a waitress for a short time early in their marriage. Vernon received veteran service related benefits during the marriage and was also employed as a union representative, assisting federal employees. He retired from this work years before the divorce. Vernon and Alice had no debt and lived a comfortable lifestyle. Vernon enjoyed buying gifts for Alice and provided financial support to her family throughout the marriage.

[¶5.]     At the time of trial, Vernon and Alice owned a home and an unimproved lot in Lyman County. The court found Vernon received the following monthly income: $1,553 in social security benefits, $1,877 in combat-related special compensation, $481.41 in military retirement pay, and $3,227.58 in military disability benefits for a total of approximately $7,140. Alice received $550 per month in social security benefits.

[¶6.]     In May 2019, Alice filed a complaint for separate maintenance alleging she feared for her safety living with Vernon. In accord with SDCL 25-4-33.1, the summons Alice served with the complaint included a temporary restraining order prohibiting the parties from "transferring, encumbering, concealing or in any way dissipating or disposing of any marital assets, without the written consent of the other party or an order of the Court, except as may be necessary in the usual course of business or for the necessities of life."

[¶7.] After separating from Vernon, Alice initially stayed with her grandson. She then rented a small home in Oacoma that was in poor condition. At the time of trial, Alice lived in a trailer bought by Alice's daughter, Michelle Schoeppner (Shelly), and Shelly's husband. Shelly remodeled the trailer with the hope that Alice would be able to reimburse her for the home. During the parties' separation, Alice had little money to provide for necessities, and her family assisted her financially and physically. Shelly testified that Alice needed a daily in-home caretaker and she and her husband were taking turns staying with Alice.

[¶8.] Alice sought interim spousal support in May 2019, claiming her monthly expenses were $2,145. In her application, Alice alleged that Vernon had become hostile, ordered her out of the marital home, took away her vehicle, and threatened to cut her off from financial support. Prior to a hearing, the parties stipulated to the entry of an order for Vernon to pay Alice $1,000 a month in spousal support and to make an additional one-time payment of $1,950 for Alice's apartment rent and deposit.

[¶9.] Alice obtained a protection order against Vernon in January 2020 requesting the court to remove him from the home so that she could return. Vernon agreed to the entry of a protection order but did not admit to the allegations contained in Alice's petition. Vernon was ordered out of the home. Later, Alice voluntarily moved out of the home and Vernon moved back in.

[¶10.] Subsequently, Alice filed a motion seeking an increase in interim spousal support. Alice claimed monthly expenses of approximately $1,700. Following an evidentiary hearing, the circuit court ordered Vernon to pay Alice

$2,500 per month for interim support beginning June 1, 2020. The court also ordered Vernon to pay Alice an additional $10,000 payment that was ultimately credited to him in the final property division.

[¶11.]     In March 2020, Alice moved to amend the complaint for separate maintenance to a complaint for divorce. At the start of trial on March 19, 2021, Vernon agreed to Alice's motion to amend her complaint for a divorce on the grounds of irreconcilable differences. Vernon and Shelly testified at the trial. Alice was unable to attend the trial and did not testify. Vernon detailed his mental health issues and described the parties' marriage and separation. Vernon also testified about his and Alice's finances and banking, explaining that they each had personal bank accounts and a joint bank account. Shelly's testimony focused on Vernon's treatment of Alice, Alice's deteriorating health, and Alice's financial needs.

[¶12.]     The circuit court found that the joint bank account had a balance of $126,000 at the time of the separation and that the account balance was approximately $10,000 at the time of trial.[1] Vernon was unable to provide a specific accounting of this spending. In July 2019, Vernon withdrew almost $29,000 from

---

1.    The parties introduced bank account records from the joint account and Vernon's individual account from the beginning of 2018 until the time of trial. The bank records reveal that the joint account had a minimal balance at the time of the separation, while Vernon's account had a balance of $136,000 at the time of the separation and approximately $10,000 at the time of trial. The monthly bank statements from the beginning of 2018 show that both parties' social security benefits, as well as Vernon's retirement pay and disability benefits, were paid into the joint account each month. Vernon would then transfer his monthly income into his individual account. Most of Vernon's spending and cash withdrawals were from his individual account. The bank records also show that Vernon would transfer funds from his personal bank account to Alice's account from time to time.

the account that he was unable to explain. However, the evidence showed that Vernon paid $25,000 for the purchase of a boat that month. Vernon also explained that he used cash to pay for regular purchases and usually carried approximately $500 for gas, meals, and other basic living expenses. Vernon also testified that Alice had withdrawn money from the joint bank account at the time of the separation and that he had given Alice money to purchase a car during the separation. Vernon claimed he was also forced to replace items of significant value, such as leather recliners and a riding lawn mower, that Alice had taken from the marital home.

[¶13.] Vernon acknowledged that in addition to the purchase of the boat, he purchased a pickup for $35,000 in November 2019. When Vernon was questioned whether he believed these purchases were an appropriate use of the money under the restraining order, Vernon stated, "I didn't care. . . . By that time I was pretty fed up."

[¶14.] The circuit court entered findings of fact and conclusions of law and a decree granting a divorce on the grounds of irreconcilable differences. The court also entered amended findings of fact and conclusions of law in response to Vernon's post-trial objections. The court divided the parties' marital property and, for the most part, adopted Vernon's valuation of the parties' assets. The court awarded Vernon the marital home while Alice received the unimproved lot. The court also divided the other marital property in existence at the time of trial and ordered

Vernon to pay Alice $61,830 to equalize the value of the property divided between them.[2]

[¶15.] The circuit court also determined that Vernon had spent up to $280,000 in what the court deemed to be marital assets in violation of SDCL 25-4-33.1. The court found that Vernon's "massive cash spending, without receipts" was unfair to Alice as she "scrimped and saved" and that Vernon's spending had been largely frivolous. The circuit court acknowledged that some of Vernon's expenditures were for necessities and to replace items Alice took from the marital home, but ultimately awarded Alice an additional sum to reflect Vernon's dissipation of the marital assets.

[¶16.] In calculating the sum that Vernon had spent, the court considered the $116,000 difference between the bank account balance in April 2019, and the account balance at the time of trial. Additionally, the circuit court found that Vernon failed to account for more than $164,000 that he received from his social security, military retirement, and disability benefits in the twenty-three months after the entry of the temporary restraining order, and when adding these amounts, the court determined that Vernon had spent $280,000 in violation of the court

---

2. The court adopted Vernon's property valuations in the spreadsheet showing that he was responsible to make a cash payment of $68,804 to Alice to equalize the property division. However, in its written findings and conclusions, the circuit court referenced two different cash equalization amounts, $68,804 and $61,830. The court ultimately ordered Vernon to pay a cash equalization payment of $61,830. Vernon objected to the circuit court's proposed findings of fact and conclusions of law identifying that the cash equalization payment specified on the court's joint property exhibit and in the findings of fact and conclusions of law were inconsistent, but neither party has addressed the issue on appeal.

order. Based upon its findings, the court ordered Vernon to pay an *additional* cash equalization payment of $140,000 to Alice. The circuit court ordered Vernon to pay Alice a total property cash equalization payment of $201,830 ($140,000 plus $61,830) within ninety days after the entry of the divorce decree.

[¶17.]     In awarding Alice permanent alimony of $1,500 per month, the court found that Vernon financially supported the couple during their 28-year marriage but recognized Alice's contributions as a homemaker and supportive companion to Vernon along with her willingness to endure Vernon's behavior caused by his mental health conditions. The court found that both parties were no longer capable of physical labor, both parties had health issues, Alice's medical needs will continue to grow, and Alice will lose the Medicare supplemental health insurance benefits provided as part of Vernon's military retirement once the divorce decree is entered. The court also recognized that Vernon had significant monthly income while Alice did not, and the parties were debt-free. Although the parties stipulated to a divorce on the grounds of irreconcilable differences, the court found that Vernon was primarily at fault for the breakdown of the marriage. Finally, the circuit court concluded that it was appropriate to consider Vernon's total income, including his military retirement pay, disability benefits, and social security, in determining spousal support.

[¶18.]     Vernon appeals and raises the following issues:

1.     Whether the circuit court abused its discretion in classifying Vernon's retirement income and disability benefits as marital property subject to equitable division.

-7-

2.      Whether the circuit court clearly erred in finding that Vernon dissipated marital property in violation of the temporary restraining order.

3.      Whether the circuit court abused its discretion in awarding Alice permanent alimony.

## Analysis

### 1.      *Classification of Vernon's retirement income and disability benefits.*

[¶19.]      This Court reviews the circuit court's division of marital property for an abuse of discretion. *Osdoba v. Kelley-Osdoba*, 2018 S.D. 43, ¶ 10, 913 N.W.2d 496, 500. The court's classification of property as marital or non-marital is also reviewed for an abuse of discretion. *Green v. Green*, 2019 S.D. 5, ¶ 21, 922 N.W.2d 283, 290. "An abuse of discretion occurs when discretion is exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Id.* ¶ 11, 922 N.W.2d at 288 (citation omitted). We review the circuit court's findings of fact "under the clearly erroneous standard of review. 'We will overturn the [circuit] court's findings of fact on appeal only when a complete review of the evidence leaves [this] Court with a definite and firm conviction that a mistake has been made.'" *Osdoba*, 2018 S.D. 43, ¶ 9, 913 N.W.2d at 500 (alterations in original) (citations omitted) (quoting *Miller v. Jacobsen*, 2006 S.D. 33, ¶ 19, 714 N.W.2d 69, 76).

[¶20.]      Vernon argues (1) that the circuit court erred as a matter of law in concluding that his military retirement pay and disability benefits were marital property subject to division under federal law and (2) that the circuit court abused its discretion by failing to apply the established state law rules to determine whether the $280,000 the court found Vernon had dissipated during the proceedings

should be treated as marital property. Alice argues that the circuit court properly treated Vernon's total income received post-separation and the pre-separation bank account funds as marital property because Vernon failed to maintain the property separately and Alice had need for support and made significant contributions toward the accumulation of these funds.

a. *Application of federal law to Vernon's disability benefits.*

[¶21.] Under federal law, Vernon argues that his military retirement pay and disability benefits are not subject to division by a state court. However, his argument fails to acknowledge the significant differences between the treatment of military retirement pay and military disability benefits upon divorce under federal law. *Urbaniak v. Urbaniak*, 2011 S.D. 83, ¶ 13, 807 N.W.2d 621, 625. Military "[r]etirement benefits are for military service members who serve for a specific period, usually twenty years or more[,]" and are determined by the number of years served and rank achieved, whereas "a military service member who becomes disabled as a result of military service is eligible for disability benefits." *Id.* ¶¶ 13, 14. The veteran's disability benefits are determined by "the seriousness of the disability and the degree to which the veteran's ability to earn a living has been impaired." *Id.* ¶ 14. Notably, "[d]isability benefits are not assignable and are exempt from attachment, levy, seizure, and taxation." *Id.* "A military retiree who is also disabled may receive disability benefits (and incur tax-exempt status) only if he or she waives a corresponding amount of military retirement pay." *Id.*; *see also Howell v. Howell*, 581 U.S. 214, 137 S. Ct. 1400, 1403, 197 L. Ed. 2d 781 (2017) ("[T]o prevent double counting, . . . federal law typically insists that, to receive

disability benefits, a retired veteran must give up an equivalent amount of retirement pay. And, since retirement pay is taxable while disability benefits are not, the veteran often elects to waive retirement pay in order to receive disability benefits.").

[¶22.]     This distinction in the treatment of military retirement pay and military disability benefits began following the U.S. Supreme Court's decision in *McCarty v. McCarty*. *McCarty* declared that military retirement pay could not be treated as community property divisible at divorce. 453 U.S. 210, 235, 101 S. Ct. 2728, 2742, 69 L. Ed. 2d 589 (1981), *superseded by statute*, Uniformed Services Former Spouses' Protection Act, Pub. L. No. 97-252, 96 Stat. 718 (1982) (codified in part at 10 U.S.C. § 1408), *as recognized in Howell*, 137 S. Ct. at 1403. In response, Congress enacted the Uniformed Services Former Spouses' Protection Act (USFSPA) in 1982, authorizing states to "treat veterans' 'disposable retired pay' as divisible property, *i.e.*, community property divisible upon divorce."[3] *Howell*, 137 S. Ct. at 1403 (quoting 10 U.S.C. § 1408(c)(1)). However, the USFSPA "expressly excluded from its definition of 'disposable retired pay' amounts deducted from that pay 'as a result of a waiver . . . required by law in order to receive' disability benefits." *Id.* (quoting 10 U.S.C. § 1408(a)(4)(A)(ii)).

[¶23.]     Following Congress's enactment of the USFSPA, the U.S. Supreme Court declared in *Mansell v. Mansell* that federal law preempts state marital property law and prohibits state courts from treating military disability benefits,

---

3.     "The language of the [USFSPA] covers both community property and equitable distribution States[.]" *Mansell v. Mansell,* 490 U.S. 581, 584 n.2, 109 S. Ct. 2023, 2026 n.2, 104 L. Ed. 2d 675 (1989).

received after the waiver of military retirement pay, as marital property subject to division. 490 U.S. at 594–95; *see also Hisgen v. Hisgen*, 1996 S.D. 122, ¶ 6, 554 N.W.2d 494, 496 ("[T]he USFSPA denies authority to state courts to treat disability payments as [marital] property when military retirement payments have been waived to receive such disability amounts.").[4] Under the USFSPA, a state divorce court may treat a veteran's total monthly retirement pay, except any portion of anticipated retirement pay that was waived to receive military disability benefits, as marital property divisible between a veteran and a former spouse upon divorce.

[¶24.] The U.S. Supreme Court's decision in *Howell v. Howell* further clarified the USFSPA's preemption of state marital property law as to the treatment of disability benefits received after the waiver of military retirement pay. 137 S. Ct. at 1402. In *Howell*, a veteran waived a share of his military retirement pay to receive disability benefits after the entry of a divorce decree that divided his military retirement pay. *Id.* The Court concluded that the former spouse could not be indemnified for the portion of the military retirement pay lost from the veteran's post-divorce waiver because the USFSPA preempts state marital property law and prohibits a state court from treating military disability benefits received as a result

---

4. Our decision in *Hisgen v. Hisgen* upheld a stipulated property division in a divorce decree that divided all future military benefits 50/50 between a veteran and his spouse, despite the veteran subsequently waiving a significant portion of his military retirement pay in order to receive military disability benefits after the divorce decree was entered. 1996 S.D. 122, ¶ 10, 554 N.W.2d at 498. This holding appears to run afoul of *Howell*, in which the U.S. Supreme Court faced a similar issue and held any order that treats military disability benefits as marital property "displace[s] the federal rule and stand[s] as an obstacle to the accomplishment and execution of the purposes and objectives of Congress." *Id.* at 1406.

of a waiver of military retirement pay as divisible marital property. *Id.* at 1405. The Court specifically rejected the former spouse's argument that she was seeking indemnification for the loss of the military retirement pay, not an order to divide marital property, explaining that states cannot avoid federal preemption by relying on arguments rooted in semantics. *Id.* at 1406. The Court concluded, "[w]e see nothing in this circumstance that makes the reimbursement award to [former spouse] any the less an award of the portion of military retirement pay that [veteran] waived in order to obtain disability benefits. And that is the portion that Congress omitted from the Act's definition of 'disposable retired pay[.]'" *Id.* at 1405 (citation omitted).

[¶25.]     The circuit court could treat Vernon's military retirement pay as marital property under the USFSPA; however, the circuit court could not treat the military disability benefits Vernon received each month during the parties' twenty-three month separation as a marital asset subject to SDCL 25-4-33.1. There is no dispute that $5,104.58 of the money Vernon received each month during the separation was military disability benefits Vernon received due to his combat-related disability.[5] The circuit court's order mandating Vernon to reimburse Alice

---

5.     The circuit court found that $1,877 of the $5,104.58 monthly disability pay that Vernon received was combat-related special compensation (CRSC). In order to be eligible for CRSC, a veteran must be entitled to retirement pay and have a combat-related disability. 10 U.S.C. § 1413a(c)(1)–(2). CRSC is not retired pay under federal law. 10 U.S.C. § 1413a(g). Other jurisdictions considering CRSC pay have held that it cannot be treated as marital property under the USFSPA. *See, e.g., Foster v. Foster*, 949 N.W.2d 102, 112 (Mich. 2020), *reh'g denied*, 945 N.W.2d 842 (Mich. 2020) ("Because CRSC is not 'retired pay' under Title 10, it would not be subject to division as a marital asset under 10 USC 1408(c). Any amounts waived that lead to the receipt of

(continued . . .)

for the spending of his military disability benefits rested on the circuit court's conclusion that Alice was entitled to these benefits as a marital asset under SDCL 25-4-33.1. Federal law precluded the circuit court from treating the $117,405 in total monthly disability benefits Vernon received during the twenty-three month separation as a marital asset subject to SDCL 25-4-33.1. *See Howell*, 137 S. Ct. at 1405 ("[F]ederal law completely pre-empts the States from treating waived military retirement pay as divisible community property."). The circuit court "necessarily abuse[s] its discretion if it base[s] its ruling on an erroneous view of the law[.]" *Corcoran v. McCarthy*, 2010 S.D. 7, ¶ 13, 778 N.W.2d 141, 147 (first and second alterations in original) (citation omitted).

[¶26.] SDCL 25-4-33.1 restrains a party from dissipating *marital assets*. "Spouses are certainly 'entitled to maintain separate property and do with it as they see fit.'" *Field v. Field*, 2020 S.D. 51, ¶ 17, 949 N.W.2d 221, 224 (citation omitted). Based on our determination that Vernon's military disability benefits cannot be treated as marital property under federal law, the circuit court's determination that Vernon dissipated the disability benefits in violation of SDCL 25-4-33.1 was error.

---

(. . . continued)

CRSC would likewise not be divisible in this manner."); *In re Marriage of Cassinelli*, 229 Cal. Rptr. 3d 801, 808 (Cal. Ct. App. 2018) ("Because CRSC is not retired pay—just as veteran's disability benefits are not retired pay— under [USFSPA] as construed in *Mansell*, a state court does not have jurisdiction to treat CRSC as community property."). The parties have not argued that the CRSC benefits Vernon received each month should be treated any differently under the USFSPA than military disability benefits.

### b. Application of State law to Vernon's retirement income.

[¶27.] Vernon also argues under state law that the circuit court abused its discretion in classifying his monthly military retirement pay and military disability benefits as marital property because the benefits were earned for Vernon's military service that ended prior to the marriage and Alice did not contribute to Vernon's receipt of these benefits. Since Vernon's military disability benefits cannot be treated as marital assets under federal law, we only consider whether the circuit court erred in treating his monthly military retirement pay as a marital asset under SDCL 25-4-33.1.[6]

[¶28.] "South Dakota is an all property state, meaning all property of the divorcing parties is subject to equitable division by the circuit court, regardless of title or origin." *Osdoba*, 2018 S.D. 43, ¶ 18, 913 N.W.2d at 502 (quoting *Nickles v. Nickles*, 2015 S.D. 40, ¶ 32, 865 N.W.2d 142, 153); *see also* SDCL 25-4-44. The "circuit court must classify property as marital or non-marital" in determining the equitable division of property. *Osdoba*, 2018 S.D. 43, ¶ 19, 913 N.W.2d at 502. The circuit court has broad discretion in classifying property as marital or non-marital. *Id.*

[¶29.] We have identified seven factors for the circuit court to consider in classifying property:

> (1) the duration of the marriage; (2) the value of the property
> owned by the parties; (3) the ages of the parties; (4) the health of

---

6. Vernon has not argued that the circuit court erred in treating the social security payments he received prior to the trial as a marital asset under SDCL 25-4-33.1. As such, we decline to address the court's treatment of the social security benefits.

the parties; (5) the competency of the parties to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets.

*Id.* (citation omitted). Additionally, the circuit court must set aside property as non-marital when "one spouse has made no or de minimis contributions to the acquisition or maintenance of an item of property and has no need for support[.]" *Id.* (citation omitted). This Court reviews the circuit court's determination "that one spouse made a de minimis contribution for clear error." *Conti v. Conti*, 2021 S.D. 62, ¶ 31, 967 N.W.2d 10, 18.

[¶30.] In classifying Vernon's retirement income as marital property, the circuit court found that Alice made non-economic contributions to the accumulation of the parties' assets during the marriage and considered some of the relevant factors for determining whether to exclude property from the marital estate. *See Field*, 2020 S.D. 51, ¶ 18, 949 N.W.2d at 225. However, the circuit court failed to address the extent to which Alice needed Vernon's military retirement pay for support. *See Id.* ¶¶ 28, 30, 949 N.W.2d at 227. On remand, the circuit court should classify Vernon's monthly military retirement pay of $481.41 received during the separation as marital or non-marital by determining whether Alice contributed to Vernon's receipt of these funds *and* whether Alice needed these funds for support.[7]

---

7. The circuit court included both the pre-separation funds in the bank account and the monthly retirement pay and disability benefits received by Vernon post-separation as marital property in determining that Vernon improperly spent $280,000 of marital assets. Vernon does not challenge the circuit court's classification of the pre-separation bank account funds as marital property, under either federal or state law. "We will consider only those issues that the parties actually briefed." *Daily v. City of Sioux Falls*, 2011
(continued . . .)

## 2.      Dissipation of marital assets.

[¶31.]      Vernon argues that in addition to the circuit court's improper classification of his military disability benefits and retirement pay as marital property, the court clearly erred in finding that he spent $280,000 in violation of SDCL 25-4-33.1.  To determine whether a spouse dissipated marital assets, we have identified that the circuit court should consider "whether the transfers were improperly made to deplete the marital estate." *Pennock v. Pennock*, 356 N.W.2d 913, 915 (S.D. 1984) (explaining that if the spouse made fraudulent transfers, then the property should have been included in the marital estate); *see also Johnson v. Johnson*, 471 N.W.2d 156, 161 (S.D. 1991) ("If the trial court finds, based on the evidence presented at the original trial, that husband fraudulently dissipated marital assets, they should be included in the marital estate and charged against him.").  We have explained, however, that "SDCL 25-4-33.1(1) does not require evidence of bad faith or a design to deplete the marital estate[.]" *Ahrendt v. Chamberlain*, 2018 S.D. 31, ¶ 17, 910 N.W.2d 913, 920 (holding the circuit court acted within its discretion in finding the transfer of an account by one spouse to her son for college expenses, without the consent of the other spouse prior to the divorce trial, to be a violation of SDCL 25-4-33.1(1)).

[¶32.]      We agree with Vernon that the circuit court's finding that he spent $280,000 in violation of SDCL 25-4-33.1 is clearly erroneous.  In fact, the court

---

(. . . continued)

S.D. 48, ¶ 10 n.6, 802 N.W.2d 905, 910 n.6.  Therefore, we decline to consider whether the court abused its discretion in classifying the $126,000 that existed in Vernon's bank account at the time of the separation as marital property.

acknowledged that a portion of the $280,000 spent included "necessities and replacement of things taken by Alice out of the marital home." The court did not attempt to calculate the amount Vernon spent on his own necessary living expenses during the two-year separation but appears to have estimated the portion of the $280,000 Vernon improperly spent to be "generally in the amount of $200,000." The court also determined Vernon was entitled to a credit from this amount for the $60,000 he spent on the pickup and boat during the separation, which the court had already "considered as an asset in Vernon's column" as part of the property division. However, in deducting for Vernon's "necessities" and vehicle purchases, it is unclear whether the court considered the $43,000 in court ordered interim support that Vernon paid to Alice, and at least another $10,000 he paid to Alice during the separation.[8]

[¶33.]     The court ultimately determined that Vernon should pay Alice $140,000 as an additional property award to reflect his improper expenditures during the separation.[9] Based upon the circuit court's clear error in its findings on

---

8.    In addition to other money Vernon claims to have given to Alice during the separation, Vernon presented undisputed evidence that Alice withdrew $4,000 from the account when she left the marital home, that he gave Alice at least $1,950 for apartment rent and rental deposit, and that he transferred $5,000 to Alice's account and testified that Alice used the money to purchase a vehicle.

9.    The circuit court's findings and conclusions lack clarity whether the $140,000 figure represented one half of the $280,000 that the court found was improperly spent by Vernon in violation of SDCL 25-4-33.1, or if the figure was intended to represent the net amount that should be included as part of the marital estate. If it was the latter, the court failed to make an equitable division of this asset, and instead awarded the entire amount to Alice. *See Taylor v. Taylor,* 2019 S.D. 27, ¶ 16, 928 N.W.2d 458, 465 (discussing the

(continued . . .)

this award, the court's error in failing to properly apply federal law to the military disability pay Vernon received during the separation, and the court's error in failing to classify his military retirement pay under state law, we reverse and remand this award for reconsideration by the circuit court in accordance with this opinion.

### 3. Permanent Alimony.

[¶34.] "We review decisions on alimony for an abuse of discretion. But we review questions of law bearing on an alimony award de novo." *Urbaniak*, 2011 S.D. 83, ¶ 13, 807 N.W.2d at 624–25 (citation omitted). The circuit court has discretion to "compel one party to make such suitable allowance to the other party for support during the life of that other party or for a shorter period, as the court may deem just, having regard to the circumstances of the parties represented[.]" SDCL 25-4-41. The party requesting alimony bears the burden of proving "that they have a need for support and that their spouse has sufficient means and abilities to provide for part or all of the need." *Kolbach v. Kolbach*, 2016 S.D. 30, ¶ 16, 877 N.W.2d 822, 828 (citation omitted).

[¶35.] South Dakota law authorizes permanent alimony, which "is intended as an allowance for support and maintenance for such things as food, clothing, habitation and other necessaries." *Lowe v. Schwartz*, 2007 S.D. 85, ¶ 12, 738 N.W.2d 63, 67 (emphasis and citation omitted). When determining whether alimony is warranted, the circuit court considers:

---

(. . . continued)
court's discretion to divide marital property by considering the seven factors for property division.)

> (1) the length of the marriage; (2) each party's earning capacity; (3) their financial conditions after the property division; (4) each party's age, health, and physical condition; (5) their station in life or social standing; and (6) the relative fault in the termination of the marriage.

*Urbaniak,* 2011 S.D. 83, ¶ 27, 807 N.W.2d at 628 (quoting *Lovejoy v. Lovejoy,* 2010 S.D. 39, ¶ 7, 782 N.W.2d 669, 672). "[A] circuit court is required to consider the allocation of property and spousal support together." *Osdoba,* 2018 S.D. 43, ¶ 26, 913 N.W.2d at 504 (citation omitted). "It is '[t]he symbiotic relationship between property division and spousal support [that] requires consideration of the two together, as an award of more assets can eliminate or reduce the need for spousal support and vice versa.'" *Id.* (alterations in original).

[¶36.] Vernon initially argues that the circuit court was prohibited by federal law from considering his military disability benefits in determining alimony. Contrary to Vernon's claim, it is well-established that the circuit court may consider military disability benefits in determining support. *Urbaniak,* 2011 S.D. 83, ¶ 20, 807 N.W.2d at 627; *see also Howell,* 137 S. Ct. at 1406 (explaining that a state court may consider the reduction in value of military retirement pay from a waiver to obtain disability benefits in determining spousal support). The circuit court did not err in considering Vernon's disability benefits in establishing the amount of alimony.

[¶37.] Vernon also argues that the circuit court abused its discretion by failing to consider his financial condition and Alice's need for support after the property division award. Alice asserts that the circuit court made sufficient findings regarding Alice's need for support and Vernon's ability to pay when it

found that Vernon had a monthly income of approximately $7,140 and that "[a]lthough the court has set out a fair division of the assets above, it is also clear that Alice's retirement income is nowhere near what Vernon will have each month and Alice's needs will only grow with her age."

[¶38.] While the court's findings are sparse concerning the extent of Alice's need for support and Vernon's ability to pay—particularly after the court's order for Vernon to pay a significant cash payment as a part of the property division—we need not determine whether the circuit court's alimony award was an abuse of discretion in light of our reversal of the property division award. Under these circumstances, we vacate the alimony award and remand the issue of alimony for the court to determine after it reconsiders the property division. *See Scherer v. Scherer*, 2015 S.D. 32, ¶ 11, 864 N.W.2d 490, 494 (reversing and remanding the circuit court's alimony award when it failed to consider alimony and property division together). On remand, after dividing the property consistent with this opinion, the circuit court should consider the parties' financial condition, including Alice's need for support and Vernon's ability to pay support.

### 4. *Appellate attorney fees.*

[¶39.] Both parties moved for appellate attorney fees pursuant to SDCL 15-26A-87.3 and SDCL 15-30-6 and attached itemized statements of the legal services rendered. "To determine whether attorney fees are proper in domestic relation cases, we consider the property owned by each party, the relative incomes, the liquidity of the assets and whether either party unreasonably increased the time spent on the case." *Barton v. Barton*, 2012 S.D. 44, ¶ 25, 815 N.W.2d 553, 559

(quoting *Larson v. Larson*, 2007 S.D. 47, ¶ 22, 733 N.W.2d 272, 278). This Court "also examine[s] the fee request from the perspective of whether the party's appellate arguments carried any merit." *Trumm v. Cleaver*, 2013 S.D. 85, ¶ 16, 841 N.W.2d 22, 26 (quoting *Roth v. Haag*, 2013 S.D. 48, ¶ 21, 834 N.W.2d 337, 342). Although Vernon's appeal was meritorious, we decline to award either party appellate attorney fees, as neither party unreasonably increased the time spent on this case and Alice has a more limited income than Vernon.

[¶40.]　　　Reversed and remanded.

[¶41.]　　　KERN, SALTER, DEVANEY, and MYREN, Justices, concur.